[No. B093699. Second Dist., Div. Five. Aug. 12, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
IDAR A. ACOSTA, Defendant and Appellant.

**[Opinion certified for partial publication.‡]**

‡Pursuant to California Rules of Court, rules 976(b) and 976.1, the following portions of the opinion are certified for publication.

414

**COUNSEL**

Paul Kujawsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

Sharon Wooden Richard and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.**—Defendant, Idar A. Acosta, appeals from a judgment entered following a trial in which: the jury returned a verdict of guilty of sale of a controlled substance (Health & Saf. Code, § 11352, subd. (a)); he admitted two prior serious felony convictions allegations (Pen. Code,[1] § 667.5, subd. (b)); and he admitted a single prior controlled substance conviction allegation. (Health & Saf. Code, § 11370.2, subd. (a).) In the published portion of the opinion, we address the question of whether defendant can present for the first time on appeal his contention that the trial court miscalculated the award of presentence credits.

. . . . . . . . . . . . . . . . . . . . . . . . .*

█ Defendant contends he is entitled to additional presentence custody and conduct credits. (§§ 2900.5, 4019.) We agree. However, before calculating the amount of presentence credits, we address an issue the parties have been given an opportunity to brief—the effect of section 1237.1 on defendant's right to raise the question of the correctness of the award of custody and conduct credits. In 1995, the Legislature amended section 1237, subdivision (a), the statute that provides for a right to appeal, to state in pertinent part: "An appeal may be taken by the defendant: [¶] (a) From a final judgment of conviction except as provided in Section 1237.1 and Section 1237.5." Also, the Legislature adopted section 1237.1, which provides: "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court." In the present case, defendant did not file a motion in the trial court seeking to correct award of presentence credits. Section 1237.1 was not adopted as urgency legislation and became effective January 1, 1996. (Stats. 1995, ch. 18, § 2; Cal. Const., art. IV, § 8, subd. (c)(1).) Defendant argues that section 1237.1 does not apply to the present case because his notice of appeal was filed May 5, 1995, prior to the January 1, 1996, effective date of section 1237.1. Based upon our Supreme Court's approval in *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 289 [279 Cal.Rptr. 592, 807 P.2d 434]

---

[1]Unless otherwise indicated, all future statutory references are to the Penal Code.
*See footnote, *ante,* page 411.

(hereafter *Tapia*) of the holding of *Andrus* v. *Municipal Court* (1983) 143 Cal.App.3d 1041, 1046-1047 [192 Cal.Rptr. 341] (hereafter *Andrus*), disapproved on another point in *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1207, footnote 11 [246 Cal.Rptr. 629, 753 P.2d 585], we conclude section 1237.1 should apply even though the notice of appeal was filed prior to the effective date of section 1237.1.

■ Section 3 states: "NOT RETROACTIVE. No part of it is retroactive, unless expressly so declared." As a general rule, criminal statutes are therefore applied prospectively only, in the absence of a legislative intent to the contrary. (*People* v. *Teron* (1979) 23 Cal.3d 103, 116-117 [151 Cal.Rptr. 633, 588 P.2d 773], disapproved on other grounds in *People* v. *Chadd* (1981) 28 Cal.3d 739, 750, fn. 7 [170 Cal.Rptr. 798, 621 P.2d 837]; *Sekt* v. *Justice's Court* (1945) 26 Cal.2d 297, 299-310 [159 P.2d 17, 167 A.L.R. 833]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Introduction to Crimes, § 37, p. 46.) ■ The problem that arises is what is being retroactively applied. In *Tapia, supra,* 53 Cal.3d at page 288, our Supreme Court described a dichotomy in terms of retroactive application of a statute in the criminal context as follows: "There remains the question of what the terms 'prospective' and 'retrospective' mean. Tapia argues that a law is being applied retrospectively if it is applied to the prosecution of a crime committed before the law's effective date. For some types of laws, the test which Tapia proposes is clearly appropriate. Certainly a law is retrospective if it defines past conduct as a crime, increases the punishment for such conduct, or eliminates a defense to a criminal charge based on such conduct. Such a law, as applied to a past crime, 'change[s] the legal consequences of an act completed before [the law's] effective date,' namely the defendant's criminal behavior. [Citations.] Application of such a law to past crimes would also violate the constitutional rule against ex post facto legislation. [Citations.] [¶] Tapia's proposed test is not appropriate, however, for laws which address the conduct of trials which have yet to take place, rather than criminal behavior which has already taken place. Even though applied to the prosecution of a crime committed before the law's effective date, a law addressing the conduct of trials still addresses conduct in the future. This is a principle that courts in this state have consistently recognized. Such a statute ' "is not made retroactive merely because it draws upon facts existing prior to its enactment . . . . [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future.' [Citations.] For this reason, we have said that 'it is a misnomer to designate [such statutes] as having retrospective effect.' [Citation.]"

In *Tapia, supra,* 53 Cal.3d at pages 288-289, our Supreme Court further described the retroactive effect of statutes to future trials and appeals as

follows: "We previously addressed this issue in *Estate of Patterson* (1909) 155 Cal. 626 . . . . The case involved the proof of a will that was destroyed in the great San Francisco fire of 1906. The testatrix died later that year, unaware that her will was gone. In 1907, the Legislature amended the Civil Code to permit proof of a will ' "shown to have been . . . by public calamity destroyed in the lifetime of the testator, without his knowledge . . . ." ' [Citation.] Holding the new statute applicable, we stated that '[i]t is a mistake to characterize the amendment of section 1339 as a retrospective law. It relates wholly to what shall be done upon the trial of the application for probate, the proof that must be furnished and the facts which must be established. It applies only to trials which take place after its enactment. It can have no effect whatever on previous trials or enactments. It is prospective only in its nature.' [Citation.]"

Thereupon, our Supreme Court illustrated the point as follows, which as will be noted includes a specific reference to *Andrus*: "Courts came to the same conclusion in subsequent decisions. In *Strauch* v. *Superior Court* [(1980)] 107 Cal.App.3d 45 [165 Cal.Rptr. 552], the court held to be prospective a statute which imposed on plaintiffs in malpractice suits the requirement of filing a certificate of merit, even as applied to causes of action that accrued before the statute's effective date. The new statute operated prospectively because it did not 'create a new cause of action or deprive a malpractice defendant of any defense on the merits or affect vested rights.' [Citation.] Similarly, in *Andrus* v. *Municipal Court*[,] [*supra,*] 143 Cal.App.3d 1041 . . . , the court immediately applied a new statute eliminating the right to appeal from certain orders of the superior court denying extraordinary relief. Noting that '[r]etroactive is not an apt word, of course,' the court found it 'absurd' to 'subscribe to the notion that the Legislature desired to postpone the demise of a procedural loophole . . . .' (*Andrus* v. *Municipal Court, supra*, [143 Cal.App.3d] at p. 1047.)" (*Tapia, supra*, 53 Cal.3d at p. 289.)

In *Andrus*, the authority cited with approval in *Tapia*, the municipal court denied a criminal defendant's motion for a court reporter. The defendant filed a petition for writ of mandate in the superior court, seeking to set aside the order denying the motion for a court reporter. The superior court denied his petition. On June 22, 1982, the defendant filed his notice of appeal as permitted under then existing law. (*Andrus, supra*, 143 Cal.App.3d at p. 1044.) Effective January 1, 1983, Code of Civil Procedure section 904.1 was amended to prohibit appeals from the denial of a criminal defendant's mandate petition which was denied in the superior court. The Court of Appeal noted that when the notice of appeal was filed, the defendant was "unquestionably entitled to appeal as a matter of statutory right." (143

Cal.App.3d at p. 1045.) Nonetheless, the Court of Appeal held that section 3 did not act to permit the appeal to proceed. The court held: "To deny retroactive application to the amendment of section 904.1 is to subscribe to the notion that the Legislature desired to postpone the demise of a procedural loophole which was inequitable to defendants accused of more serious offenses, placed unnecessary and redundant burdens on the appellate courts, and provided for concurrent and possibly inconsistent appellate review of the same issue. We find that proposition absurd. The Legislature must be presumed to act in light of existing judicial decisions. [Citation.] There could be no good reason to differentiate between cases where the superior court ruled on a petition for extraordinary relief before rather than after January 1, 1983, so long as pending appeals are treated as writ petitions pursuant to the statutory change. [¶] The district attorney argues, persuasively in our view, where a statutory procedural right or remedy is repealed, the repealer is effective on the date it is enacted in the absence of a savings clause. Since the pretrial writ/appeal procedure was a purely statutory creature, we hold it expired, like most parasites, with the demise of its host. [Citations.]" (*Andrus, supra,* 143 Cal.App.3d at pp. 1047-1048, fn. omitted.)

The foregoing analysis in *Andrus,* the decision cited with approval in *Tapia,* is consistent with well established California law. The black letter statement of our state's law concerning the repeal of a statutory remedy while a case is on appeal is contained in *Governing Board* v. *Mann* (1977) 18 Cal.3d 819, 829 [135 Cal.Rptr. 526, 558 P.2d 1], where the California Supreme Court held: "A long well-established line of California decisions conclusively refutes plaintiff's contention. Although the courts normally construe statutes to operate prospectively, the courts correlatively hold under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, 'a repeal of [the] statute without a saving clause will terminate all pending actions based thereon.' (*Southern Service Co., Ltd.* v. *Los Angeles* [(1940)] 15 Cal.2d 1, 11-12 [97 P.2d 963].) [¶] As explained nearly 50 years ago in *Callet* v. *Alioto* (1930) 210 Cal. 65, 67-68 . . . : 'It is too well settled to require citation of authority, that . . . every statute will be construed to operate prospectively and will not be given a retrospective effect, unless the intention that it should have that effect is clearly expressed. . . . It is also a general rule, subject to certain limitations not necessary to discuss here, that a cause of action or remedy dependent on a statute falls with a repeal of the statute, even after the action thereon is pending, in the absence of a saving clause in the repealing statute. [Citations.] The justification for this rule is that all statutory remedies are pursued with full realization that the [L]egislature may abolish the right to recover at any time.' (See generally 1a Sutherland, Statutory Construction (4th ed. 1972) § 23.33, pp. 279-281.)" (Accord,

*Younger* v. *Superior Court* (1978) 21 Cal.3d 102, 109 [145 Cal.Rptr. 674, 577 P.2d 1014]; *Stacy & Witbeck, Inc.* v. *City and County of San Francisco* (1995) 36 Cal.App.4th 1074, 1085-1086 [42 Cal.Rptr.2d 805]; *Baker* v. *Sudo* (1987) 194 Cal.App.3d 936, 944-945 [240 Cal.Rptr. 38]; *South Coast Regional Com.* v. *Gordon* (1978) 84 Cal.App.3d 612, 615 [148 Cal.Rptr. 775]; *Estes* v. *City of Grover City* (1978) 82 Cal.App.3d 509, 515-516 [147 Cal.Rptr. 131].) ■ When there is a repeal of a statute affecting the right to appeal, the appellate court decides the case under the law in effect at the time of the decision. As the Supreme Court held in *Southern Service Co., Ltd.* v. *Los Angeles* (1940) 15 Cal.2d 1, 12 [97 P.2d 963]: " 'The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. *The reviewing court must dispose of the case under the law in force when its decision is rendered.*' " (Italics added; accord, *Beckman* v. *Thompson* (1992) 4 Cal.App.4th 481, 489 [6 Cal.Rptr.2d 60]; *Chapman* v. *Farr* (1982) 132 Cal.App.3d 1021, 1024 [183 Cal.Rptr. 606]; *Department of Social Welfare* v. *Wingo* (1946) 77 Cal.App.2d 316, 320 [175 P.2d 262].)

■ The foregoing state of the law is directly applicable to the present case. Prior to the adoption of section 1237.1, some courts required motions to correct a grant of presentence credits be made in the trial court before the issue could be raised on appeal. (*People* v. *Salazar* (1994) 29 Cal.App.4th 1550, 1557 [35 Cal.Rptr.2d 221]; *People* v. *Culpepper* (1994) 24 Cal.App.4th 1134, 1138 [29 Cal.Rptr.2d 719]; *People* v. *Fares* (1993) 16 Cal.App.4th 954, 958 [20 Cal.Rptr.2d 314].) However, because our Supreme Court has held that miscalculation of presentence credits is a jurisdictional error which can be raised on appeal even though the issue was never presented to the trial judge, in most districts and divisions, defendants were free to raise issues concerning presentence credits on appeal as a jurisdictional error even though no correction motion was ever raised in the trial court. (*People* v. *Karaman* (1992) 4 Cal.4th 335, 349-350 [14 Cal.Rptr.2d 801, 842 P.2d 100] [presentence credits issue involves a legally unauthorized sentence]; *Wilson* v. *Superior Court* (1980) 108 Cal.App.3d 816, 818-819 [166 Cal.Rptr. 795] [a legally unauthorized sentence is subject to judicial correction whenever discovered].) However, section 1237.1 has changed the state of the law concerning a defendant raising an issue of presentence credits. The right to appeal is solely statutory. (*People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 709 [135 Cal.Rptr. 392, 557 P.2d 976], disapproved on another point in *People* v. *Green* (1980) 27 Cal.3d 1, 33-35 [164 Cal.Rptr. 1, 609 P.2d 468] ["a judgment or order is not appealable unless expressly made so by statute"]; *Skaff* v. *Small Claims Court* (1968) 68 Cal.2d 76, 78 [65 Cal.Rptr. 65, 435

P.2d 825] ["a party possesses no right of appeal except as provided by statute"]; *People* v. *Keener* (1961) 55 Cal.2d 714, 720 [12 Cal.Rptr. 859, 361 P.2d 587], disapproved on another point in *People* v. *Butler* (1966) 64 Cal.2d 842, 844 [52 Cal.Rptr. 4, 415 P.2d 819] ["an order is not appealable unless declared to be so by the Constitution or by statute"]; *People* v. *Valenti* (1957) 49 Cal.2d 199, 204 [316 P.2d 633], disapproved on another point in *People* v. *Sidener* (1962) 58 Cal.2d 645, 647 [25 Cal.Rptr. 697, 375 P.2d 641] ["the right of appeal is statutory and a judgment . . . is not appealable unless it is expressly made so by statute"]; *Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 728 [192 P.2d 916] ["the Legislature has the power to declare by statute what orders are appealable, and, unless a statute does so declare, the order is not appealable"]; *Trede* v. *Superior Court* (1943) 21 Cal.2d 630, 634 [134 P.2d 745] [there being no constitutional right of appeal; "the appellate procedure is entirely statutory and subject to complete legislative control"]; *Superior Wheeler C. Corp.* v. *Superior Court* (1928) 203 Cal. 384, 386 [264 P. 488] ["right of appeal is statutory and may be granted or withheld"].) Therefore, since there has been a statutory modification of the right to appeal issues concerning miscalculation of presentence credits by a defendant, given the aforementioned body of law, that question cannot be raised until defendant makes a motion to correct the award of presentence credits in the trial court even though he filed his notice appeal prior to the effective date of section 1237.1. Solely on that ground, we will not consider defendant's contention he is entitled to an additional award of presentence credits.

■ However, the parties raise an additional consideration which leads us to conclude that section 1237.1 only applies when the sole issue raised on appeal involves a criminal defendant's contention that there was a miscalculation of presentence credits. In other words, section 1237.1 does not require a motion be filed in the trial court as a precondition to litigating the amount of presentence credits when there are other issues raised on direct appeal. Whether section 1237.1 is limited to cases where the sole issue on appeal relates to presentence credits is an issue of statutory interpretation. ■ In construing statues, we apply the following standard of review described by our Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) Further, our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of

a statute) . . . .' " (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) However, the literal meaning of a statute must be in accord with its purpose as our Supreme Court noted in *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute] . . . .' " In *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation] . . . ." One of the factors we consider in determining the legislative intent is the " 'object in view' " and the problem the Legislature was addressing. (See *Walters* v. *Weed* (1988) 45 Cal.3d 1, 10 [246 Cal.Rptr. 5, 752 P.2d 443]; *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260].)

We begin by reviewing the language of section 1237.1. Section 1237.1 provides "[n]o appeal" shall be taken "on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing" or at a later time if the mistake is discovered "after sentencing." The statutory language is ambiguous. The statute can be read to prohibit the filing of the notice of appeal if the sole issue is the propriety of the calculation of presentence credits. On the other hand, the statutory provision can be read to prohibit a defendant from ever presenting a presentence credit issue on appeal without first raising the question in the trial court, even after judgment. If section 1237.1 merely applies when the sole issue on appeal involves presentence credits, then defendant can raise the issue in this case because he has presented various other contentions which we have resolved adversely to him in the unpublished portion of this opinion. In order to resolve the ambiguity in the statute, we turn to the legislative history of section 1237.1.

Section 1237.1 was part of Assembly Bill No. 354. (Stats. 1995, ch. 18, § 2.) Assembly Bill No. 354 amended sections 1237 and 1237.1. Section 1 of Assembly Bill No. 354 amended section 1237 to state: "An appeal may be taken by the defendant: [¶] (a) From a final judgment of conviction except

as provided in Section 1237.1 and Section 1237.5. A sentence, an order granting probation, or the commitment of a defendant for insanity, the indeterminate commitment of a defendant as a mentally disordered sex offender, or the commitment of a defendant for controlled substance addiction shall be deemed to be a final judgment within the meaning of this section. Upon appeal from a final judgment the court may review any order denying a motion for a new trial. [¶] (b) From any order made after judgment, affecting the substantial rights of the party." (Stats. 1995, ch. 18, § 1.) Section 2 of Assembly Bill No. 354 enacted section 1237.1. Assembly Bill No. 354 was introduced on February 10, 1995. When the legislation was first brought before the Assembly Committee on Public Safety, one of the stated purposes was as follows, "This bill would codify developing case law requiring defendants to seek correction of clerical or mathematical error in calculation of presentence custody credits in the trial court to prevent misuse of appellate process for ministerial purpose." (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 354 (1995-1996 Reg. Sess.) Apr. 25, 1995.) The developing "case law" was identified later in the same committee report as follows: "Case Law. Recently, the Court of Appeal have expressed dismay that defendants have utilized the formal appeal process solely to correct an error in the calculation of presentence custody credits. [¶] In *People* v. *Fares*[,] [*supra*,] 16 Cal.App.4th 954, the defendant's sole contention of error on appeal related to the computation of presentence custody credits made by the trial court at the time of sentencing. Apparently, the documentation was conflicting on whether the defendant was entitled to 41 days of presentence credits or only nine days. The Fourth District Court of Appeal found 'the unusual mathematical calculation required to derive section 4019 credits from actual time served has given rise to a number of appellate pronouncements.' The Fourth District expressed its frustration with the recurring problem of addressing appeals involving the sole issue of credit calculation. [¶] The *Fares* Court explained there was not a time limitation upon the right to make the motion to correct the sentence. The *Fares* Court emphasized, 'The calculation of custody credits in the ordinary case is little more than a ministerial review of the record and an arithmetic calculation. We can perceive no reason why a defendant should lose his entitlement to credits simply because of inadvertence or mathematical error of the court, the probation department or his own counsel.' (*People* v. *Fares, supra,* 16 Cal.App.4th at p. 959[.]) [¶] Although, the courts have voiced frustration at the recurring problem of addressing credit miscalculation on appeal, the courts have been reluctant to dismiss appeals and direct the defendants to seek their remedy in the trial court. This bill would prevent the appeal from even being filed without the defendant first having attempted to correct the error in the trial court. The proposed Penal Code section 1237.1 would thus

promote judicial economy by avoiding the utilization of the formal appellate process for a minor ministerial act. The statute would not preclude a defendant the remedy of an appeal if the dispute as to the credits could not be resolved in the trial court." (*Ibid.*) Virtually the same language appeared in the report prepared for the Senate Committee on Criminal Procedure. (Sen. Com. on Crim. Procedure, Analysis of Assem. Bill No. 354 (1995-1996 Reg. Sess.) May 16, 1995.)

The Legislature's reliance on and determination to codify retired Associate Justice Charles W. Froehlich, Jr.'s opinion in *Fares* is of considerable importance. *Fares* was a case where the sole issue raised on appeal involved presentence credits. In *Fares*, Associate Justice Froehlich articulated the issue on appeal in this fashion: "Michael Richard Fares was convicted by a jury of grand theft. (. . . § 487, subd. 1.) His probation for two prior convictions was revoked and he was sentenced on all three convictions. Fares's appeal does not challenge the trial or verdict in any respect. His *one* contention of error relates to the computation of presentence custody credits made by the trial court at the time of sentencing. He had spent 95 days of actual custody on one of the cases with respect to which probation was revoked. The court gave him credit for these 95 days, but added no section 4019 credits. Section 4019 provides that a prisoner will earn additional presentence credits for time previously served (when his work performance and behavior have been satisfactory). [¶] The unusual mathematical calculation required to derive section 4019 credits from actual time served has given rise to a number of appellate pronouncements. (See *In re Jackson* (1986) 182 Cal.App.3d 439 . . . ; *People* v. *Bobb* (1989) 207 Cal.App.3d 88 [254 Cal.Rptr. 707] [disapproved on other grounds in *People* v. *Barton* (1995) 12 Cal.4th 186, 198, fn. 7 (47 Cal.Rptr.2d 569, 906 P.2d 531)]; *People* v. *Bravo* (1990) 219 Cal.App.3d 729 . . . .) Based on Fares's admitted service of 95 presentence actual custody days, the application of the mathematical formula prescribed by section 4019 produces 46 additional days of credits. The court awarded 'zero days [section] 4019 . . . credits,' and it is *solely* this ruling which gives rise to the appeal." (*People* v. *Fares*, *supra*, 16 Cal.App.4th at p. 956, italics added & fns. omitted.) Later, Associate Justice Froehlich raised the issue which the legislative committee reports adverted to as to whether it was more politic, cost efficient, and reasonable to require the presentence credits question be litigated in the trial court even after the imposition of judgment when that was the only issue raised on appeal. Justice Froehlich noted: "Is not there a better way of going about this sort of corrective jurisprudence than by including it in a formal appeal, especially when it is the *only* ground of appeal? There is! The most expeditious and, we contend, the appropriate method of correction of errors of this kind is to move for correction in the trial court. It is the obligation of

the superior court, under section 2900.5, to calculate the number of credit days and include same in the abstract of judgment (§ 2900.5, subd. (d)). If a dispute arises as to the correct calculation of credit days, such should be presented on noticed motion 'for resolution to the court which imposed the sentence and which has ready access to the information necessary to resolve the dispute.' (*People* v. *Hyde* (1975) 49 Cal.App.3d 97, 102 . . . (hereafter *Hyde*).) [¶] There is no time limitation upon the right to make the motion to correct the sentence. 'The . . . effect of the court's failure to comply with [section 2900.5, subdivision (d)] [is] to render its initial finding and resulting sentence a nullity. It follows that once appropriately apprised of its inadvertence, the court therein [becomes] licensed to impose a proper finding and sentence. [Citations.]' (*People* v. *Brite* (1983) 139 Cal.App.3d 950, 955-956 . . . (hereafter *Brite*).) The court's power to correct its judgment includes corrections required not only by errors of fact (as in the mathematical calculation) but also by errors of law. (*Id.* at p. 956, fn. 11.) [¶] It must be acknowledged that our conclusion as to the most appropriate method of resolving errors in presentence custody credit calculation is contrary to the holding in *People* v. *Lynn* (1978) 87 Cal.App.3d 591 . . . (hereafter *Lynn*). An admirably brief and direct opinion from our own court, *Lynn* held that an error in determination of custody credits must be addressed by timely appeal and cannot be raised at the trial court level after expiration of the time for appeal. *Lynn* distinguished *Hyde* on the ground that at the time of *Hyde* section 2900.5 did not provide for court determination of custody credits, and hence '[t]he remedy lacking when *Hyde* was decided is now available at sentencing and review may be had on appeal from the judgment.' (*Lynn*, *supra*, at p. 593.) [¶] *Lynn* was reviewed and criticized in *People* v. *Underwood* (1984) 162 Cal.App.3d 420, 423 . . . (hereafter *Underwood*). *Underwood*, like *Lynn* and the case presently before us, dealt with a postsentence claim of error in calculation of credits. *Underwood* questioned whether correction of an error in calculation could be constitutionally precluded simply by the passage of time, and suggested that *Lynn* had given no consideration to the circumstances creating the error in the first place. In *Underwood*, as in our case, 'the credit issue was not fully argued and the full facts concerning it were not presented at the sentencing hearing. The trial court did not fulfill its statutory obligation to ascertain the appropriate amount of presentence custody credits to which defendant was entitled.' (*Id.* at p. 423.) Under these circumstances the *Underwood* court declined to follow the *Lynn* precedent. [¶] We are persuaded by the reasoning of *Underwood*, and we also decline to follow *Lynn*. As stated in *Hyde*, the calculation of custody credits in the ordinary case is little more than a ministerial review of the record and an arithmetic calculation. We can perceive [of] no reason why a defendant should lose his entitlement to credits simply because of inadvertence or mathematical error of the court,

the probation department or his own counsel. We agree with the ruling in *Brite* that when 'appropriately apprised of its inadvertence, the court [becomes] licensed to impose a proper finding and sentence,' and that there is no time limitation circumscribing this procedure. ([*People* v. *Brite, supra,*] 139 Cal.App.3d at p. 955.)" (*People* v. *Fares, supra,* 16 Cal.App.4th at pp. 958-959.)

The foregoing language in *Fares* mirrors the issues and concerns discussed in the committee reports. Both the committee reports and *Fares* involve the question of the use of the appellate process solely for the purpose of correcting the award of presentence credits. Neither the committee reports nor *Fares* address the issue here—whether a motion to correct the award of presentence credits is necessary when other issues have been presented on appeal. Neither in the language of section 1237.1 nor in the committee reports is there explicit evidence of a legislative design to require that a motion to correct an erroneous presentence credit award be made before the issue can be litigated on appeal when other contentions remain for decision.[6] There is no doubt however that the Legislature intended to require dismissal

---

[6]The Attorney General has submitted for our review internal State Department of Justice documents which we decline to judicially notice. Assembly Bill No. 354 was introduced by Assemblyperson James Rogan at the request of the State Attorney General. Before its introduction in the Legislature, the proposed legislation of what would ultimately become section 1237.1 was the subject of some discussion in the Office of the Attorney General. Deputy Attorney General Olivia Rosales suggested that the holding of *Fares* as well as *People* v. *Little* (1993) 19 Cal.App.4th 449, 451-452 [23 Cal.Rptr.2d 394] and *People* v. *Robinson* (1994) 25 Cal.App.4th 1256, 1258-1259 [31 Cal.Rptr.2d 445] be codified. She recommended to her superiors the following in a memorandum dated November 9, 1994, "Legislation should be enacted in the form of . . . section 1237.1 to preclude defendants from raising on appeal from the judgment of conviction when the sole issue contended is an error in the calculation of presentence custody credits." (Mem. from Deputy Atty. Gen. Olivia Rosales to S. Asst. Atty. Gen. Carol Wendelin Pollack and Supervising Deputy Atty. Gen. Tricia Ann Bigelow (Nov. 9, 1994) p. 5.) On January 17, 1995, Ms. Rosales later forwarded a memorandum to Jack R. Stevens, the Assistant Attorney General for the Office of Legislative Affairs for the California Department of Justice, in which she proposed the adoption of section 1237.1 as it was ultimately enacted. (Mem. from Deputy Atty. Gen. Olivia Rosales to Asst. Atty. Gen. Jack R. Stevens (Jan. 17, 1995) p. 5.) On February 10, 1995, Assemblyperson Rogan introduced Assembly Bill No. 354 which contained the precise language suggested by Ms. Rosales. No doubt, as conceived by the Attorney General, section 1237.1 was only intended to apply when the sole issue on appeal involved presentence credits. However, we decline to judicially notice the internal Department of Justice memoranda. There is no evidence that Ms. Rosales's memoranda, which is clear as to the purpose of the proposed section 1237.1 and its limited application to appeals where the sole issue on appeal involves presentence credits, was ever before the Assembly members or Senators when the statute was enacted. Because there is no evidence the legislators considered her memoranda, it is not admissible on the issue of legislative intent. (Cf. *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-701 [170 Cal.Rptr. 817, 621 P.2d 856]; accord, *Roberts* v. *City of Palmdale* (1993) 5 Cal.4th 363, 377 [20 Cal.Rptr.2d 330, 853 P.2d 496].)

of an appeal where the only issue posited by the defendant involves an issue of presentence credits and the question was not preserved in the trial court.

Of further consequence is the clear legislative intention that principles of judicial economy be advanced by the enactment of Assembly Bill No. 354. When the only issue to be raised on appeal involves a matter such as presentence credits, the Legislature's determination that the issue should first be presented in the trial court makes sound economic sense. However, when there are other issues which are to be litigated on appeal, the economic good sense reflected by section 1237.1, the legislative committee reports, and Associate Justice Froehlich's opinion in *Fares* no longer exists. The preparation of an appellate record is an expensive proposition. If no issue other than one relating to a single order, the award of presentence credits is going to be raised, the preparation of the normal record on appeal as required by rule 33[7] of the California Rules of Court would be a unwarranted expenditure of public moneys. Further, the appointment of counsel on appeal results in an attorney who has a duty to ensure a proper record is prepared. (*People* v. *Barton* (1978) 21 Cal.3d 513, 519-520 [146 Cal.Rptr. 727, 579 P.2d 1043]; *People* v. *Harris* (1993) 19 Cal.App.4th 709, 714 [23 Cal.Rptr.2d

---

[7]Rule 33 of the California Rules of Court states: "(a) [Normal record] If the appeal is taken by the defendant from a judgment of conviction, or if the appeal is taken by the People from an order granting a motion for a new trial, the record on appeal, except as stated in this rule, shall include the following (which shall constitute the normal record): [¶] (1) A clerk's transcript, containing copies of (a) the notice of appeal, any certificate of probable cause executed and filed by the court, and any request for additional record and any order made pursuant thereto; (b) the indictment, information or accusation with any amendments; (c) any demurrer; (d) any motion for a new trial, with supporting and opposing memoranda and affidavits; (e) all minutes of the court relating to the action; (f) the verdict; (g) the judgment or order appealed from and any abstract of judgment—commitment; (h) written instructions given or refused indicating on each instruction the party requesting it; (i) all written communications, formal or informal, between the court and the jury or any individual jurors; (j) any written opinion of the court. If the appeal is by the defendant, the clerk's transcript shall also include copies of (k) each written motion made by defendant and denied in whole or in part, with supporting and opposing memoranda and related affidavits, search warrants and returns, and the transcript of any preliminary examination or grand jury hearing related thereto; (l) the report of the probation officer; (m) copies of certified records of a court or of the Department of Corrections that were introduced in evidence to prove a prior conviction or prior prison term. [¶] (2) A reporter's transcript of (a) the oral proceedings taken on the trial of the cause, including motions in limine heard by the trial judge, jury instructions, and proceedings at the time of sentencing, granting of probation, or other dispositional hearing, but excluding the voir dire examination of jurors and opening statements; (b) the oral proceedings on the hearing of the motion for a new trial, and on the entry of any plea other than a plea of not guilty; and (c) any oral opinion of the court. If the appeal is by the defendant, the reporter's transcript shall also contain (d) the oral proceedings on any motion made by defendant under section 1538.5 . . . and denied in whole or in part; and (e) closing arguments to the jury, comments on the evidence by the court before the jury, and all communications to and from the jury after instructions have been given whether or not denominated as questions or instructions."

586].) Moreover, there is a duty to write a brief which discusses all of the material facts. (Cal. Rules of Court, rule 13.) If the only issue to be resolved is one involving presentence credits, all of this expenditure of public funds is not economically wise if the issue can be resolved by the trial judge. It makes great sense to require that an effort be made to resolve the sole issue of presentence credits prior to raising the matter on appeal.

However, if there are other appellate issues such as occurred in the present case, requiring a motion be made in the trial court in order to raise the question on appeal no longer is an economical expenditure of public moneys. Virtually all counsel on appeal are appointed by the court and their fees and costs are funded by the taxpayers. If there is a ministerial error in the calculation of credits as alluded to in *Fares*, it does not take the taxpayer-funded appointed appellate counsel long to insert that argument in an opening brief along with other contentions. Moreover, it is more cost efficient to have all of the contentions presented in one forum and brief. Appointed counsel appearing in the Second Appellate District have their offices all throughout California. It is typical for a lawyer in, for example, San Francisco, Petaluma, San Diego, or Berkeley to represent criminal defendants who were tried and convicted in Los Angeles Superior Court in appeals in the Court of Appeal in Los Angeles. To require such appointed lawyers to file a brief and also a motion which, depending on the circumstances may require a court appearance in Los Angeles Superior Court, with attendant costs of travel time and transportation expenses when the same presentence credit issue can be tersely raised in an opening brief contravenes the clear legislative intent that section 1237.1 "promote judicial economy." (Sen. Com. on Crim. Procedure, Analysis of Assem. Bill No. 354 (1995-1996 Reg. Sess.) May 16, 1995; Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 354 (1995-1996 Reg. Sess.) April 25, 1995.) We emphasize that we are not quarreling with the Legislature's policy decision in any respect in enacting section 1237.1. We are not permitted to do so. (*Rhiner* v. *Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1226 [18 Cal.Rptr.2d 129, 848 P.2d 244]; *Delaney* v. *Superior Court, supra,* 50 Cal.3d at p. 805.) Rather, we make reference to the economic issue because the Legislature intended to reduce public costs and not to create a rule where publicly compensated lawyers are flying up and down the state for hearings on motions when the same issue can be succinctly raised on direct appeal in a less costly fashion. Accordingly, we agree with both defendant and the Attorney General that when the object in view of the Legislature is considered, section 1237.1, when properly construed, does not require defense counsel to file motion to correct a presentence award of credits in order to raise that question on appeal when other issues are litigated on appeal. If

there are no other issues, the filing of a motion in the trial court is a prerequisite to raising a presentence credit issue on appeal.[8]

In the present case, defendant received an incorrect award of presentence credits. He should have received 159 days of actual custody credits plus 78 days of conduct credits. (§§ 2900.5, 4019.) Accordingly, his total credits are 237 days.[9]

The judgment is modified to reflect defendant is to receive presentence credits of 159 days of actual custody credit plus 78 days of conduct credit for total credits of 237 days. In all other respects, the judgment is affirmed.

Grignon, J., and Godoy Perez, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 26, 1996.

---

[8]The failure to award an adequate amount of credits is a jurisdictional error which may be raised at any time. (*People* v. *Karaman, supra,* 4 Cal.4th at pp. 345-346, fn. 11, 349, fn. 15; *People* v. *Serrato* (1973) 9 Cal.3d 753, 763-765 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144].) If a case is pending on appeal, section 1237.1 vests the trial court with the power to rule on a request for additional credits.

[9]It naturally bears emphasis that trial counsel has the duty to correctly calculate the credits. Defense counsel has a duty to ensure the defendant receives all the credits the law allows. The prosecutor has a duty to ensure the defendant does not receive too many credits. These duties are ethical responsibilities imposed on all criminal litigators. Further, it is the duty of the trial court to award the correct amount of credits.