Filed 11/8/23  P. v. Yu CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHRISTOPHER DAI-ICHI YU,<br><br>    Defendant and Appellant. | G061406<br><br>(Super. Ct. No. 10WF0524)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Lance P. Jensen, Judge.  Reversed and remanded with directions.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

In 2011, a jury convicted defendant Christopher Dai-Ichi Yu of murder (Pen. Code, § 187, subd. (a); count 1),[1] attempted murder (§§ 664, subd. (a), 187, subd. (a); count 2), and active participation in a criminal street gang (§ 186.22, subd. (a); count 3). The jury found true that the murder was committed during a robbery (§ 190.2, subd. (a)(17)(A)), that defendant committed the murder and attempted murder for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and that he personally discharged a firearm in the commission of those offenses (§ 12022.53, subd. (c)). In 2013, this court affirmed the conviction but remanded for sentencing errors (*People v. Yu* (April 16, 2013, G046106) [nonpub. opn.] (*Yu I*).)

In 2019, defendant filed a petition for resentencing under former section 1170.95 (now section 1172.6).[2] The trial court granted the petition, dismissed count 1 and its associated enhancements, and resentenced defendant on the remaining counts. On count 2, defendant was resentenced to 37 total years in prison on count 2 (7 years plus 20 years for the firearm enhancement and 10 years for the gang enhancement), and the sentence on count 3 was stayed under section 654.

On appeal, defendant identifies five reasons why the matter should be remanded for resentencing: (1) reversal is required for the active gang participation conviction on count 3 and gang enhancement on count 2 due to recent amendments to section 186.22; (2) the trial court failed to order a supplemental probation report for the resentencing; (3) the court failed to impose a sentence on count 3 before staying it under section 654; (4) the court failed to recalculate custody credits; and (5) the court abused its discretion in failing to dismiss certain enhancements in violation of section 1385. The Attorney General agrees, as do we, that remand is appropriate with respect to the first

_____

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Effective June 30, 2022, section 1170.95 was renumbered with no change in text. (Stats 2022, ch. 58, §10).

four contentions. As for the fifth contention, we conclude the court did not abuse its discretion in declining to dismiss the enhancements because it found that dismissal "would endanger public safety." (§ 1385, subd. (c)(2).)

## FACTS

We granted defendant's unopposed request for judicial notice of *Yu I*, *supra*, G046106, and the underlying appellate record. (Evid. Code, §§ 452, subd. (d)(1), 459.) We restate the facts, in part, from that opinion.

"The jury convicted defendant of the murder of Tina Tuyet Huynh committed during a robbery. Huynh died after she held onto the side of a speeding car (in which defendant was a passenger) and was dragged by the car for several blocks. Eventually, Huynh fell to the street and died of blunt force trauma caused by the fall.

"In a police interview, defendant recounted the scam drug deal that led to Huynh's death. According to defendant, Lynn Quach picked him up in her car and they drove to a park. There, Quach stopped her car behind a white Acura in which a lone man was sitting. Huynh was there to pick up 2,000 pills of Ecstasy she wanted to buy from Quach and defendant. Quach asked Huynh if she had the money. Huynh replied she had about $4,000, but demanded to see the Ecstasy. Defendant did not have any Ecstasy, but he needed money to pay his bills, so he pretended to have the pills. Huynh showed defendant the money twice. The second time, defendant 'took it.' He 'grabbed the money real' quick. Quach drove off, but Huynh 'was hanging on' the car and cursing, 'Motherfuckers.' The Acura chased Quach's car. Quach drove up and down a few streets. Huynh 'was hanging on to a door.' She had 'already let go of the money a while ago.' Defendant held onto Huynh's hand and told Quach to stop so Huynh could 'get off.' Huynh's purse was hanging on the mirror. At some point, defendant grabbed the purse 'real quick' and tossed it in the back of Quach's car. Defendant had his gun. Quach said, 'Hey, get her off.' Quach wanted defendant to scare Huynh off the car with his gun. According to defendant, he refused to do so, saying, 'That's stupid.' But, while

3

Huynh was hanging on the car, defendant fired a shot up in the air. At some point, Huynh 'let go' of the car. Quach and defendant '[k]ept on going.' With Huynh off the car, the Acura rammed Quach's car — first, its rear bumper and then both of its sides. Defendant shot his gun four more times to scare the driver of the other car; defendant made it look like he was pointing, but he was pointing up.

"A witness saw Quach's car traveling at around 70 miles per hour with what appeared to be a person on the side of the car." (*Yu I*, *supra*, G046106.)

"Huynh's body was found face down in the street. Clumps of hair were 'strewn around her, her clothes were torn up, she was really dirty.' 'Her face was swollen, bruised; her skin was ripped off; [she had] severe road rash on her back; . . . there was hardly any skin left on the heels of her feet.' Paramedics performed CPR on her. She was unresponsive, had no pulse, and had suffered major head injuries. She was transported to the hospital. No gunshot wounds or gun residue were found on her body.

"A search of Quach's car uncovered a firearm and a collapsible baton under the center console, an envelope containing cash, a yellow purse on the floorboard behind the driver's seat, and a bag of candies removed from their wrappers.

"A search of Pham's Acura uncovered a bullet hole near the front passenger headlight and a bullet in the car." (*Yu I*, *supra*, G046106.)

In 2011, the jury convicted defendant of murder (count 1), attempted murder (count 2), and active participation in a criminal street gang (count 3). The jury found true the robbery-murder special circumstance as to count 1, and the gang and firearm allegations as to counts 2 and 3.

On count 1, the trial court dismissed the robbery-murder special circumstance allegation and sentenced defendant to a prison term of 55 years to life (25 years to life, plus 20 years to life for the firearm enhancement and 10 years for the gang enhancement). On count 2, defendant was sentenced to a term of 39 years to life (10

4

years, plus the same terms for the firearm and gang enhancements).  And on count 3, the court imposed a two-year term and stayed execution pursuant to section 654.

In *Yu I*, this court affirmed defendant's convictions but remanded for sentencing errors.  (*Yu I, supra*, G046106.)  As directed, the trial court sentenced defendant to a determinate 20-year term for each firearm enhancement on counts 1 and 2, struck the 10-year gang enhancement on count 1, and instead imposed a 15-year parole minimum on count 1.  The court exercised its discretion not to strike the gang enhancement on count 2.

In 2019, defendant petitioned to vacate his murder conviction and for resentencing.  In 2022, following an evidentiary hearing, the trial court granted the petition.  In May 2022, the trial court resentenced defendant to a total of 37 years in prison.  The court dismissed count 1 and its associated enhancements.  On count 2, the court imposed the middle term of 7 years, plus 20 years for the firearm enhancement and 10 years for the gang enhancement, with the enhancements to run consecutive to the base term.  The court stated it had considered and given "great weight" to the factors listed in section 1385, but declined to dismiss either enhancement.  The court "looked at the totality of the circumstances and [found] the offenses committed by the defendant to be the most severe and unimaginable."  The court reasoned, "[t]o strike or dismiss the enhancement would endanger public safety."  On count 3, the court stayed imposition of sentence, citing section 654.  The court ordered the Department of Corrections and Rehabilitation to "calculate credits at 15 [percent]."  Defendant timely appealed.

## DISCUSSION

### I. *Section 186.22*

Defendant argues, and the Attorney General concedes, that defendant's conviction for active participation in a criminal street gang (§ 186.22, subd. (a); count 3) and the gang enhancement finding as to count 2 (§ 186.22, subd. (b)(1)) must be reversed

5

and the matter remanded due to recent amendments to section 186.22. We agree.

"In 2021, the Legislature passed Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Assembly Bill 333), which became effective on January 1, 2022 (see Stats. 2021, ch. 699)." (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).) Assembly Bill 333 redefined the elements of the substantive offense of active participation in a criminal street gang (§ 186.22, subd. (a)) and the gang enhancement (§ 186.22, subd. (b)). (*Tran*, at p. 1206.) As relevant here, the offense of active participation in a criminal street gang requires that defendant acted with knowledge "that its members engage in, or have engaged in a pattern of criminal activity." (§ 186.22, subd. (a).) Under the new law, the phrase "pattern of criminal gang activity" requires, among other things, that "the offenses commonly benefited a criminal street gang, and the common benefit of the offense is more than reputational." (§ 186.22, subd. (e)(1).) Similarly, as to the gang enhancement, now "the prosecution must show that the benefit to the gang was 'more than reputational.'" (*People v. Sek* (2022) 74 Cal.App.5th 657, 663 (*Sek*); § 186.22, subd. (g).) Thus, "Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.'" (*Tran*, at p. 1206.) By requiring proof that the benefit to the gang was more than reputational, Assembly Bill 333 "essentially adds a new element." (*Sek*, at p. 668.)

The parties agree, as do we, Assembly Bill 333 applies retroactively to defendant. (See *In re Estrada* (1965) 63 Cal.2d 740, 748 [statutory changes that reduce punishment for a crime apply retroactively to all judgments not yet final on statute's effective date]; *Sek, supra,* 74 Cal.App.5th at p. 667 [*Estrada* retroactivity applies to Assem. Bill 333].)

The parties also agree count 3 and the gang enhancement as to count 2 must be reversed. By requiring proof that the benefit to the gang was more than reputational, Assembly Bill 333 essentially added a new element to the substantive offense and the

6

enhancement. (§ 186.22, subds. (e)(1), (g) [benefit must be "more than reputational"]; *Sek*, *supra*, 74 Cal.App.5th at p. 668 ["more than reputational" essentially new element].) But here the jury was not required to find the common benefit of the predicate offenses was "more than reputational." The jury was instructed on count 3 (CALCRIM No. 1400) and the gang enhancement (CALCRIM No. 1401) as section 186.22 existed in 2011. At trial, the parties stipulated that on the date of the offense H-Group was a criminal street gang whose members had knowledge of, and engaged in a pattern of criminal gang activity, pursuant to section 186.22, subdivision (b), and that defendant was an active participant in that gang.

"When jury instructions are deficient for omitting an element of an offense, they implicate the defendant's federal constitutional rights, and we review for harmless error under the strict standard of *Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (*Chapman*)." (*Sek*, *supra*, 74 Cal.App.5th at p. 668.) "Under the *Chapman* standard, reversal is required unless 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.'" (*Ibid.*) We cannot say the error was harmless beyond a reasonable doubt. Defendant's stipulations to gang activity and participation were based on the definitions of a criminal street gang and a pattern of criminal gang activity predating Assembly Bill 333, so it cannot be said that the new narrower definitions were satisfied. And at trial, when a gang expert was asked about a hypothetical reflecting the circumstances of the robbery, he opined it was committed for the benefit of the gang and in association with the gang based on monetary gain and bolstering the reputation of the gang. Although there was evidence of both financial and reputational benefit, we cannot rule out the possibility that the jury relied on reputational benefit only as its basis for its findings. (*Sek, supra,* 74 Cal.App.5th at p. 669.)

We therefore reverse the jury's conviction as to count 3 and its true finding on the gang allegation as to count 2. We agree with the parties the prosecution may seek to retry these issues. (*Sek*, *supra*, 74 Cal.App.5th at p. 669.)

7

II. *Supplemental Probation Report*

Defendant contends the trial court was required to order a supplemental probation report for the 2022 resentencing hearing, rather than relying on an outdated report from 2011. The Attorney General argues that a supplemental report was merely discretionary, not required, and that defendant forfeited the issue on appeal by failing to request the report. Notwithstanding these differing positions, the parties agree the issue is moot because the matter will be remanded for resentencing. On remand, defendant may ask the trial court to order a supplemental probation report.

III. *Section 654*

The parties agree the trial court erred in failing to impose sentence on count 3. (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1472 [court "must impose sentence on every count but stay execution as necessary to implement section 654"].) We agree the court erred, but the issue is moot given our reversal of count 3, discussed *ante* in Section I.

IV. *Custody Credits*

The parties also agree the trial court did not award defendant the full amount of custody credit to which he was entitled. We agree as well.

"'Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts.' (§ 2900.1.) In the specific context of a resentencing under section 1172.6, a person resentenced 'shall be given credit for time served.' (§ 1172.6, subd. (h).)" (*People v. Rojas* (2023) 95 Cal.App.5th 48, 54.) "[I]t is the duty of the trial court to award the correct amount of credits." (*People v. Acosta* (1996) 48 Cal.App.4th 411, 428, fn. 9.) When an imprisoned defendant is resentenced following a change to his judgment, "the sentencing court must recalculate and credit against the modified sentence *all actual time*

8

the defendant has already served, whether in jail or prison, and whether before or since he was originally committed and delivered to prison custody." (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29.) A trial court's failure to fulfill this obligation renders the sentence "unauthorized." (*Rojas*, at p. 54.)

Here, at the original 2011 sentencing hearing, the trial court awarded defendant 601 days for actual time served. A decade later, at the resentencing hearing, the court awarded the same 601 custody credits. We accordingly remand so the trial court may recalculate the correct credits and prepare a new abstract of judgment.

V. *Section 1385*

Trial courts have long had discretion to dismiss sentencing enhancements "in the furtherance of justice." (§ 1385, subd. (b)(1).) Effective January 1, 2022, section 1385 was amended "to specify mitigating circumstances that the trial court should consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 16 (*Lipscomb*).) The primary dispute between the parties is whether the trial court abused its discretion under section 1385 when it refused to dismiss the firearm enhancement as to count 2, which resulted in a sentence of over 20 years. Specifically, defendant's opening brief argues the court failed to give great weight to evidence of mitigating circumstances, "give fair consideration" to the presence of those mitigating circumstances, and find that dismissal of an enhancement would endanger public safety. Not so.

We review the trial court's decision not to strike a sentence enhancement under section 1385 for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*).) "The abuse of discretion standard is highly deferential. When, "'as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'"'" (*Ibid.*)

9

As amended, section 1385, subdivision (c), states, "the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385, subd. (c)(1).)[3]  It explains, "[i]n exercising its discretion under this subdivision, the court shall consider and *afford great weight* to evidence offered by the defendant to prove that any of the [nine] mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances *weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety*.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2), italics added.)  Only one of the nine mitigating circumstances is at issue here: when "[t]he application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement *shall* be dismissed."[4]  (§ 1385, subd. (c)(2)(C), italics added.)

Several appellate courts have construed this provision to mean "that if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances.  [Citation.]  The 'shall be dismissed' language in section 1385[, subdivision] (c)(2)(C), like the language of all of

---

[3]      "The version of section 1385 in effect at the time of [defendant]'s sentencing included a subdivision (c)(3) before listing the mitigating circumstances (A) through (I).  Effective June 30, 2022, that subdivision (c)(3) has been moved, so that the mitigating circumstances now appear in subdivision (c)(2)." (*Lipscomb*, *supra*, 87 Cal.App.5th at p. 16, fn. 3.)

[4]      Defendant also argues that the trial court abused its discretion when it refused to dismiss one of the two enhancements–gang or firearm–as to count 2.  When "[m]ultiple enhancements are alleged in a single case," section 1385 provides that "all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).)  Given our reversal of the true finding on the gang allegation and striking of the gang enhancement, discussed *ante* in Section I, this second argument is moot.

the listed mitigating circumstances, applies only if the court does *not* find that dismissal of the enhancement would endanger public safety." (*Mendoza, supra*, 88 Cal.App.5th at p. 296, fn. omitted; see, e.g., *People v. Anderson* (2023) 88 Cal.App.5th 233, 238–241, review granted Apr. 19, 2023, S278786; *People v. Walker* (2022) 86 Cal.App.5th 386, 391, 396–398, review granted March 22, 2023, S278309 (*Walker*).)[5] In other words, "[t]his language, taken together, explicitly and unambiguously establishes: the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal." (*Anderson,* at p. 239.)

Here, the trial court expressly found that striking or dismissing the firearm enhancement "would endanger public safety." Accordingly, the trial court was not required to consider or "afford great weight" to the mitigating circumstances listed in section 1385. (*Mendoza, supra*, 88 Cal.App.5th at p. 296.)

In his reply brief, defendant argues for the first time that the record does not support the court's finding that dismissal of the enhancement would endanger public safety. Defendant, however, has forfeited this contention by failing to raise it in his opening brief. (*People v. Rangel* (2016) 62 Cal.4th 1192, 1218.) In any event, we need not decide this issue because we are remanding the matter to the trial court to address the section 186.22 error. (*People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of

---

[5]     Defendant correctly notes that our Supreme Court granted review in *Walker* on the following limited issue: "Does the amendment to . . . section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (*Walker*, S278309, rev. granted March 22, 2023.) The Court ordered that *Walker* may continue to be cited for its persuasive value pending review. (*Ibid*.)

the changed circumstances'"]; *People v. Hiller* (2023) 91 Cal.App.5th 335, 351 [declining to decide whether trial court abused its discretion in refusing to strike enhancements given defendant's resentencing].) On remand, the 10-year gang enhancement as to count 2 may ultimately be eliminated, or a supplemental probation report may shed new light on whether defendant would pose a risk or danger to public safety. Either scenario would constitute "'changed circumstances'" warranting a full resentencing.

## DISPOSITION

Defendant's conviction on count 3 for active participation in a criminal street gang is reversed, and the sentence is vacated. The finding in count 2 that the attempted murder was committed for the benefit of a criminal street gang is reversed, and the gang enhancement is stricken. The matter is remanded for resentencing.

On remand, the prosecution shall have the option to retry defendant on count 3 and the gang enhancement in count 2. The trial court shall resentence defendant and recalculate custody credits. The clerk of the superior court is directed to prepare a new abstract of judgment reflecting the new award of credits, and to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation, either after retrial on count 3 and the gang allegation in count 2 or immediately if the prosecution elects not to retry defendant.

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

MOTOIKE, J.

12