Filed 9/26/13  P. v. Guluarte CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHN MARK GULUARTE,<br><br>    Defendant and Appellant. | H037861<br>(Santa Cruz County<br>Super. Ct. No. F17557) |

Defendant John Mark Guluarte pleaded no contest in 2009 to one felony (petty theft with a prior) and two misdemeanors, and the court placed him on formal probation for three years.  Included among the terms of probation was an order to pay victim restitution in the amount of $550.  But during a period of two years and five months that he was on probation, defendant only paid $7.33 in restitution.  In October 2011—following several instances in which the court revoked and reinstated probation based upon defendant's having violated its terms—the court sustained a petition alleging a further probation violation based upon defendant's willful failure to pay restitution.  The court revoked probation and sentenced defendant to two years in prison.

Defendant claims on appeal that the court abused its discretion in finding that he had violated probation because the evidence did not establish that he had willfully failed to pay victim restitution.  He argues further that the court erred in its calculation of

presentence custody credits, claiming an entitlement to eight additional days of credits. Lastly, he contends that he should have received 35 days of additional conduct credits under the latest amendment to Penal Code section 4019, effective October 1, 2011 (the October 2011 amendment).[1]  He argues that as a matter of statutory interpretation, the October 2011 amendment must be applied retroactively.

We conclude that the court did not abuse its discretion by sustaining the probation violation petition because there was substantial evidence that defendant had willfully failed to pay restitution.  Secondly, we will dismiss defendant's claim to additional custody credits because this alleged calculation error is one that defendant should have sought to resolve initially by a motion filed with the trial court.  Lastly, we reject defendant's claim of entitlement to additional conduct credits under the October 2011 amendment to section 4019.  Last year, in *People v. Kennedy* (2012) 209 Cal.App.4th 385 (*Kennedy*), we rejected the statutory interpretation argument identical to the one raised by defendant here.  Accordingly, we will affirm the judgment.

FACTS[2]

On December 2, 2008, defendant entered the home of his former girlfriend without her permission.  At the time of the offense, there was a valid protective order requiring defendant to stay away from the victim.  Defendant defaced the residence, broke a window and closet doors, damaged the victim's personal property, and carried away certain personal property belonging to the victim.

PROCEDURAL BACKGROUND

Defendant was charged by an amended information filed May 26, 2009, with felony vandalism (§ 594, subd. (b)(1); count 1); petty theft with prior offenses, a felony

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

[2] We present an abbreviated discussion of the facts underlying the convictions because they are not germane to the claims of error on appeal.

(§ 666; count 2); unauthorized entry into a dwelling, a misdemeanor (§ 602.5, subd. (a); count 3); and disobedience of a domestic relations order, a misdemeanor (§ 273.6, subd. (a); count 4). It was also alleged as enhancements that defendant had suffered two prior violent or serious felonies, i.e., strikes (§§ 667, subds. (b)-(i); 1170.12), namely, robbery (§ 211) and receiving stolen property (§ 496); had three prior felony convictions (§ 1203, subd. (e)(4)); and had two prior convictions for which he had served prison terms within the meaning of section 667.5, subdivision (b).

On May 28, 2009, defendant pleaded no contest to counts 2, 3, and 4, and admitted the allegation that he had suffered three prior felony convictions. At the request of the People, the court dismissed count 1, upon defendant's entry into a *Harvey* waiver (*People v. Harvey* (1979) 25 Cal.3d 754), permitting the trial court to consider facts underlying count 1 for purposes of victim restitution. Based upon the People's request, the court also dismissed the prior strike, the prison priors, and the probation ineligibility allegations. The court suspended imposition of sentence and placed defendant on formal probation for three years. The conditions of probation imposed by the court included defendant's serving six months in the county jail, enrollment in and completion of a one-year residential treatment program, and payment of victim restitution. The amount of victim restitution was later set at $550.

The record reflects that between May 2009 and August 2011, there were several instances in which the court revoked and reinstated probation based upon findings that defendant had violated the terms of probation.

On or about September 13, 2011, the District Attorney filed a new petition alleging probation violations by defendant. The case proceeded to hearing on October 28, 2011. After hearing evidence, the court found defendant to have violated the terms of his probation by willfully failing to pay restitution.

On December 12, 2011, the court terminated probation and sentenced defendant to two years in prison for the conviction of petty theft with a prior. The court awarded

3

defendant 291 days of custody credits and 145 days of conduct credits for a total of 436 days of presentence credits. Defendant filed a timely notice of appeal. As discussed, *post*, the court entered a post-judgment order amending the abstract of judgment to reflect that defendant had received 343 days of custody credits and 171 days of conduct credits, for a total of 514 days of presentence credits.

DISCUSSION

I.    *Finding of Probation Violation*

A.    *Proceedings*[3]

1.    *Probation Report and Witness Statement*

The September 2011 supplemental report of the probation officer was received into evidence based upon the stipulation of counsel. That report contained the following statement concerning victim restitution: ". . . Mr. Guluarte has made three payments. The last payment is noted on page 1 ["8/17/11 in the amount of $3.33"]. The previous two payments were made on 11/5/10 and 2/1/11. The amounts paid were $1.00 and $3.00[,] respectively. It is of great concern to this officer the minimal amount of restitution Mr. Guluarte has paid in total, especially after this issue was addressed in a memo to the Court on 11/19/10. Mr. Guluarte has paid a total amount of $7.33 after being on Probation for over two years with an anticipated termination date of 10/23/12. The remaining unpaid balance of restitution to the victim . . . is $542.67. Additional unpaid fines include a restitution collection fee of $55 and a fine in the amount of $370 for a total of $425."

A witness statement from defendant's acquaintance, John Scott, was also received into evidence based upon the parties' stipulation. Scott indicated that he had known

---

[3] It was alleged in the petition that, in addition to the failure to pay restitution, defendant had violated a stay-away order. The court did not sustain the petition on the basis of the alleged violation of a stay-away order. Accordingly, we omit reference to evidence submitted relevant to that other alleged probation violation.

4

defendant for some time through church, and that he understood defendant to be homeless.

## 2. *Defendant's Testimony*

Defendant is a high school graduate. He attended junior college for over two years—where he, with the exception of one course, received straight A's—but did not receive a degree. Based upon information defendant received from a deputy sheriff, in the 29 months between the grant of probation and the hearing on the probation violation petition, he had been incarcerated for 187 days (or approximately six months).[4] During the period he was not in custody, he was homeless. He lived in his truck in March 2009; at other times, he stayed with friends, at his father's motor home, at the armory, and at a homeless shelter.

Defendant received food stamps assistance in order to eat, but never received general assistance or unemployment benefits. He received some assistance from Project Reconnect, and his "sister helped [him] various times." During the time he was on probation, defendant owned a 1990 truck, which he did not drive; it was ultimately towed and dismantled. He testified that it had a value of approximately $600.

While on probation and not in custody, defendant was mostly unemployed. He did some seasonal petitioning work in 2010 (for approximately three weeks) and in 2011. He was paid approximately $250 to $300 for the work in 2011. He also did some work pulling weeds, worked two days at a service station, and worked for an undisclosed

---

[4] Defendant's testimony was that he was incarcerated for 306 days between January 29, 2009, and October 28, 2011. (Defendant in his brief, citing to his testimony, argues erroneously that he was incarcerated for 351 days for the 33 months between January 2009 and the hearing.) Since the probation order was granted on May 28, 2009, defendant's incarceration prior to that time is not relevant in determining whether defendant willfully failed to pay restitution.

period of time at a fitness center.[5] He testified that he did "a lot of job searches through EDD [California Employment Development Department]."

Defendant owed $18,000 for student loans and was eight months in arrears in his child support obligations. For some period of time, he had a cell phone. The monthly service charge for his cell phone was paid by his sister for approximately one year; he made two payments totaling approximately $60 after his sister could no longer afford them. He testified that there had never been an occasion in which he had had the ability to pay restitution and had simply not wanted to do so.

### 3. *Argument and Court's Ruling*

The prosecutor argued at the hearing that defendant had made " 'choices' " concerning his finances and employment that were without regard for the victim. He contended that defendant was employable and had chosen for the most part not to work. The prosecutor argued further that, notwithstanding defendant's homelessness and lack of resources, he had chosen to make payments for a cell phone—which the prosecutor characterized as a "luxury"—which, in total, were five times the total amount defendant had paid in restitution over a three-year period.[6] He contended that defendant's small payments in restitution constituting "thumb[ing his] nose [at] the court and probation."

Defense counsel argued that defendant's circumstances, including his extensive incarceration, homelessness, lack of income, and his back child support obligations, prevented him from making payments on the restitution order. She contended further that the evidence did not show an intent on defendant's part not to pay restitution.

---

[5] Although the record is unclear, it appears that defendant left the fitness center during the first day of work due to an encounter with the victim. Defendant testified that he received the job offer as a result of his having referred "over a hundred people" for potential club membership.

[6] It appears that the prosecutor understated this percentage. Although the record is somewhat unclear, it appears defendant made two monthly payments for the cell phone totaling $60 or $70 (or eight to nine times the total restitution payments).

The court sustained the allegation that defendant had violated probation by willfully failing to make payments toward restitution.  In so ruling, the court, inter alia, indicated:  "[Defendant] presents well.  He presents intelligently.  [¶] I'm not persuaded that he made any real effort to get a job or that he made any real effort to pay his restitution.  I can't imagine that a single-dollar payment is anything other than a slap in the face and a deliberate [one].  [¶] . . . [¶] I'm afraid I don't accept at face value many of . . . the things that he said today.  [¶] . . . [¶] Not having a job oftentimes, unfortunately, is a choice, and I didn't hear any extensive efforts to get employment in any way by somebody who clearly presents very well and probably would do quite well if he applied himself.  [¶] . . . I find . . . a willful and deliberate violation."

### B. *No Abuse of Discretion in Finding Probation Violation*

#### 1. *Applicable Law*

The version of section 1203.2 in effect at the time of the hearing on the petition provided that after the rearrest of a probationer based upon probable cause that he or she has violated any probation term or condition, "the court may revoke and terminate such probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the [probation] conditions . . .  However, probation shall not be revoked for failure of a person to make restitution . . . as a condition of probation unless the court determines that the defendant has willfully failed to pay and has the ability to pay."  (Former § 1203.2, subd (a), amended by Stats. 2012, ch. 43 (S.B. 1023), § 30, p. 1995, eff. June 27, 2012.)  " 'When the evidence shows that a defendant has not complied with the terms of probation, the order of probation may be revoked at any time during the probationary period.' "  (*People v. Johnson* (1993) 20 Cal.App.4th 106, 110.)  The violation must be proved by a preponderance of the evidence.  (*People v. Rodriguez* (1990) 51 Cal.3d 437, 441, 447 (*Rodriguez*).)

7

" 'Probation revocation proceedings are not a part of a criminal prosecution, and the trial court has broad discretion in determining whether the probationer has violated probation.' [Citation.]" (*People v. Urke* (2011) 197 Cal.App.4th 766, 772.) "[T]he Legislature . . . intended to give trial courts very broad discretion in determining whether a probationer has violated probation." (*Rodriguez, supra*, 51 Cal.3d at p. 443, citing *People v. Lippner* (1933) 219 Cal. 395, 400 [". . . only in a very extreme case should an appellate court interfere with the discretion of the trial court in the matter of denying or revoking probation . . ."].) "Such discretion 'implies that in the absence of positive law or fixed rule the judge is to decide a question by his [or her] view of expediency or of the demand of equity and justice.' [Citation.]" (*Rodriguez,* at p. 445.) Abuse of discretion has both a factual component and a legal component. (*Jacobs*, *supra*, at p. 737.) While the court's discretion is very broad, its determination must be based on the facts before it. (*People v. Zaring* (1992) 8 Cal.App.4th 362, 378; see also *People v. Galvan* (2007) 155 Cal.App.4th 978, 982 ["evidence must support a conclusion the probationer's conduct constituted a willful violation" of probation terms and conditions].) Defendant bears the burden of showing that the trial court abused its discretion in revoking probation. (*People v. Urke*, at p. 773.)

### 2. *Discussion of Claim of Error*

Defendant argues that the trial court abused its discretion in finding that he had violated probation by willfully failing to pay restitution. He contends that the evidence did not demonstrate that he had the resources to pay restitution. He argues that the evidence of his homelessness, qualification for food stamps, lack of significant employment or income, and child support and student loan indebtedness showed that he did not have the ability to pay. He argues further that "[t]here was no evidence that regular employment was available to [him], or that he failed to seek it out." He contends that although the court indicated it was skeptical about his efforts to seek employment, there was no evidence to support this view given the contrary evidence that defendant

8

obtained seasonal employment and sought employment through the EDD. He also takes issue with the court's failure to acknowledge the difficult job market defendant faced.

We acknowledge and appreciate defendant's difficult financial and other circumstances, as well as the difficult job market that he faced while on probation. The record, however, contains substantial evidence supporting the trial court's finding that defendant had willfully failed to pay restitution. The evidence was undisputed that defendant made payments in restitution totaling $7.33 between May 28, 2009, and October 28, 2011. Thus, in the 29 months leading up to the hearing, he paid an average of 25 cents per month. And even were we to disregard the six months he was in custody during probation, his restitution payments averaged about 32 cents per month. Defendant engaged in some sporadic employment while he was on probation, consisting of five different jobs. He received between $250 and $300 for his petition work in 2011. (The record does not show the income he received from his other employment of petition work in 2010, pulling weeds, working at a service station, and working at a fitness center.) Defendant also received some financial assistance while he was on probation—from Project Reconnect and from his sister. He had at least one asset of some value—a truck that he testified was worth approximately $600. And, as emphasized by the trial court, defendant made payments for a cell phone; they totaled around $60, or approximately eight times the amount he paid in restitution in 29 months.[7]

Moreover, the court noted that other aspects of defendant's performance while on probation convinced it that his failure to pay restitution was willful. After noting it had "look[ed] through the myriad of reports from probation and [defendant's] programs," the court stated that defendant had been "rejected [by] six drug treatment programs because

---

[7] The court stated: "I agree with [the prosecution's] observations about the cell phone. If he's got enough money to pay for a cell phone, he has enough money to pay toward his restitution, and I find a choice that he made, but I find that to be a willful and deliberate violation."

9

of his attitude, because of his insistence that he wanted to do things his way . . . . And I just think that he does not or did not accept that he needed to pay this restitution, and he made no real effort to do so." The court also observed that defendant was intelligent, articulate, and presented himself very well.

Defendant cites *Bearden v. Georgia* (1983) 461 U.S. 660 (*Bearden*) in support of his contention that the court erred in finding that he had willfully failed to pay restitution. He claims, inter alia, that the court, contrary to the requirements of *Bearden*, failed to make inquiry as to whether he had made bona fide attempts to secure employment, and failed to recognize his lack of income and assets.

The defendant in *Bearden*, *supra*, 461 U.S. at page 662, was sentenced to three years' probation and ordered to pay restitution after being indicted for the felonies of burglary and theft. After repeated attempts to secure employment, the defendant failed to obtain employment, and thus failed to pay restitution as required by his probation. (*Id.* at pp. 662-663.) Consequently, the trial court sentenced the defendant to state prison. (*Id.* at p. 663) On appeal, the Supreme Court held that "if the probationer has made all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own, it is fundamentally unfair to revoke probation automatically" and send the defendant to prison "without considering whether adequate alternative methods of punishing the defendant are available." (*Id.* at pp. 668-669.) The court reversed and remanded the matter to allow the trial court to determine another punishment other than prison. (*Id.* at p. 674.)

Here, while there is some evidence that defendant sought employment and in fact worked sporadically, there was significant evidence (discussed above) supporting the court's finding that "the probationer [had *not*] made all reasonable efforts to pay the . . . restitution, and yet [could not] do so through no fault of his own." (*Bearden*, *supra*, 461 U.S. at p. 668.) We disagree that *Bearden* compels the conclusion that the court erred here in finding that defendant had willfully failed to pay restitution.

10

Additionally, the fact that the court here may not have articulated each of its reasons for finding that defendant had willfully failed to pay restitution is of no consequence, as section 1203.2 contains no such requirement of specific findings. (*People v. Self* (1991) 233 Cal.App.3d 414, 418.) "Although it need not recite any talismanic words or outline in detail all relevant factors it has considered in making its determination, the trial court must make apparent on the record, prior to exercising its discretion, that it has considered and weighed relevant factors in making the determinations required by the statute, . . ." (*Ibid.*)

Moreover, we find no error in the court's indication that defendant's having made monthly payments for a cell phone offered support for the finding that he had willfully failed to pay restitution. Defendant argues that the conclusion that defendant's use of a cell phone was a luxury was erroneous because a cell phone is "increasingly characterized as a 'lifeline' for homeless people. . ." There was no evidence presented below that defendant's use of a cell phone was a necessity. And we will disregard defendant's citation to Internet articles in support of his position. (*People v. St. Martin* (1970) 1 Cal.3d 524, 537-538 ["ordinarily matters not presented to the trial court and hence not a proper part of the record on appeal will not be considered on appeal"]; see also *World Financial Group, Inc. v. HBW Ins. & Financial* (2009) 172 Cal.App.4th 1561, 1569, fn. 7 [denying request for judicial notice on appeal of Internet articles not part of trial record].)

As we have noted, the trial court has "very broad discretion" in determining whether a probationer has violated the terms and conditions of his or her probation. (*Rodriguez*, *supra*, 51 Cal.3d at p. 443.) Based upon the record before us, we find that the court's conclusion that defendant violated the terms of his probation by willfully failing to pay restitution was " 'based upon the facts before it' " and was not an abuse of discretion. (*People v. Zaring, supra*, 8 Cal.App.4th at p. 378.)

11

II.    *Claim for Additional Custody Credits*

When the court sentenced defendant on December 12, 2011, it awarded him 291 days of custody credits and 145 days of conduct credits. Defendant thereafter, by informal letter to the court, sought a modification of his presentence credits. He indicated that he believed that there had been an error in calculating custody credits and that he had been in custody a total of 351 days before he was sentenced and was therefore entitled to 60 days of additional custody credits. The court on April 4, 2012, in response to defendant's application, amended the abstract of judgment to provide that defendant was entitled to 343 days of custody credits and 171 days of conduct credits, for a total of 514 days of presentence credits. The abstract of judgment was amended accordingly.

Defendant contends that the court erred in its calculation of custody credits. He argues that he should have been awarded 351 days of credits, rather than 343 days; he is therefore seeking eight additional days of custody credits.[8] The Attorney General responds that defendant's claim is not cognizable on appeal and should be dismissed. She contends that, pursuant to section 1237.1, defendant was required to first seek a correction of the alleged error through a formal motion with the trial court.

Section 1237.1 provides: "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court." Defendant's claim of error in calculation of presentence custody credits is one that ordinarily should have been asserted initially at the trial level under section 1237.1. There is a recognized exception

---

[8] Notwithstanding his contention that the custody credits figure should have been 351 days and that he is therefore entitled to eight days beyond the 343 days awarded, defendant at one point in his brief claims he should receive 353 days of custody credits. We assume this is a typographical error.

12

to this rule when there are other issues raised in the appeal and the claim of an alleged miscalculation of presentence credits may be addressed "in the interests of economy" by the appellate court. (*People v. Jones* (2000) 82 Cal.App.4th 485, 493; see also *People v. Acosta* (1996) 48 Cal.App.4th 411, 427-428.)

But here, it is unclear from the record the precise number of days that defendant spent in custody before he was sentenced on December 12, 2011. In a memorandum filed on November 22, 2011, defense counsel claimed that 348 days was the correct number. On the date of sentencing, she claimed that defendant was entitled to 351 days of custody credit. The People apparently took no position on the matter. The court originally determined that the correct figure was 291 days. Several months later, after defendant argued by informal letter (without including a specific breakdown) for an award of 351 days, the court determined that 343 days was the correct number of days for which defendant should receive credit for having been in custody. Given the lack of information in the record before us concerning the actual number of days defendant was in custody before being sentenced, we believe that "the interests of economy" will not be served by attempting to resolve the merits of this claim. Therefore, we will dismiss it without prejudice to defendant's right to renew it by formal motion before the trial court. (See *People v. Fares* (1993) 16 Cal.App.4th 954, 958 [most expeditious way of resolving disputes concerning calculation of presentence credits is by motion to correct filed with trial court].)

III.     *Claim of Additional Conduct Credits Under Section 4019*

A.     *Summary of Contentions*

Defendant contends that the October 2011 amendment to section 4019 applies to his case. As discussed in greater detail below, he argues that under a proper interpretation of the statute, he is entitled to the benefit of the more favorable calculation of presentence conduct credits under that statutory amendment. Specifically he contends that he is entitled to the increased level of conduct credits for all days he spent in custody

13

from October 1, 2011, until his sentencing on December 12, 2011. The Attorney General responds that defendant's contentions regarding the applicability of the October 2011 amendment to his circumstances lack merit.

### B. *Background Concerning Section 4019*

Section 4019 permits a criminal defendant to earn additional credit prior to being sentenced by performing assigned labor (§ 4019, subd. (b)(1)) or by his or her good behavior during detention (§ 4019, subd. (c)(1)). Such credits are collectively referred to as "conduct credits." (*People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.) "The very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment." (*People v. Lara* (2012) 54 Cal.4th 896, 906 (*Lara*).) Section 4019 has undergone a series of revisions since 2009. (See generally *People v. Garcia* (2012) 209 Cal.App.4th 530, 535-540.)

Senate Bill No. 18 (2009-2010 3d Ex. Sess.), enacted in October 2009, amended section 4019, effective January 25, 2010, to enhance the number of presentence conduct credits for certain offenders. (Stats. 2009, 3d Ex. Sess., ch. 28, § 50, p. 4427; the January 2010 amendment.) Under the pre-January 2010 formula for calculating credits under section 4019, a defendant could accrue conduct credit of two days for every four days of actual presentence custody. (Stats. 1982, ch. 1234, § 7, p. 4554 [former § 4019, subd. (f).) Under the January 2010 amendment, a qualifying defendant—persons other than those required to register as sex offenders, or those being committed to prison for, or who had suffered prior convictions of, serious felonies as defined in section 1192.7 or violent felonies as defined in section 667.5—could accrue conduct credit of two days for every two days of presentence custody, twice the previous rate. (Stats. 2009-2010, 3d Ex. Sess., ch. 28, §§ 50, 62 [Pen.Code, former § 4019, subds. (b), (c), & (f)].)

The statute was again amended by Senate Bill 76, effective September 28, 2010, to restore the two-for-four conduct credit calculation less favorable to defendants that had been in effect prior to January 25, 2010 (Stats. 2010, ch. 426, § 2). This amendment

14

applied to persons in local custody for crimes committed on or after September 28, 2010. (Former § 4019, subd. (g), as amended by Senate Bill 76.)

And then, as part of the Realignment Act, the Legislature amended section 4019 a third time in Assembly Bill 109 (2011-2012 Reg. Sess.; Assembly Bill 109). Assembly Bill No. 109, which amended section 4019 effective July 1, 2011, authorized conduct credit for all local prisoners at the rate of two days for every two days spent in local presentence custody. (§ 4019, subds. (b) & (c), as amended by Stats. 2011, ch. 15, § 482.) Like the previous amendment to section 4019, the amendment in Assembly Bill 109 was to have prospective application only. (*Ibid.*) But before July 1, 2011—the operative date of Assembly Bill No. 109—Governor Brown signed Assembly Bill No. 117 (2011-2012 Reg. Sess.), which retained the enhanced conduct credit formula but changed the effective date to October 1, 2011. (Former § 4019, subd. (h), as amended by Stats. 2011-2012, ch. 39, § 53.) On September 20, 2011, Governor Brown signed Assembly Bill No. 1X 17 (2011-2012 1st Ex. Sess.)—the October 2011 amendment—the current version of section 4019, which retains the enhanced conduct credit provision— four days is deemed to have been served for every two days spent in actual custody. (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 35; § 4019, subd. (f).) The statute expressly states that it is to apply prospectively. (§ 4019, subd. (h).)[9]

C.    *Defendant Is Not Entitled to Additional Conduct Credits*

Defendant claims that as a matter of statutory interpretation, he is entitled to the benefit of one-for-one conduct credits under the October 2011 amendment to section 4019 "for the 73 days he served [in custody] presentencing after the October 1, 2011

---

[9] "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).)

15

amendment to Section 4019 [became effective] but before he was sentenced on December 12, 2011." By this calculation, he would be entitled to a total of 206 days of conduct credits (i.e., 35 days more than the 171 days ordered by the court). He claims that an ambiguity in subdivision (h) of section 4019 compels this conclusion. While he acknowledges that the first sentence of subdivision (h) indicates that section 4019 applies to prisoners who committed crimes on or after October 1, 2011, he asserts that the second sentence—"Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law" (§ 4019, subd. (h))—contains language favoring his position. He argues that this language creates an ambiguity, "and to harmonize the seeming conflicting language, this Court should hold that even where the crime was committed prior to October 1, 2011, conduct credit for any time prior to sentencing spent in custody on or after October 1, 2011 should be calculated based upon the enhanced, one-for-one credit scheme provided for in the October 1, 2011 amendment."

We rejected this argument in *Kennedy*, *supra*, 209 Cal.App.4th at pages 399 to 400. "We reiterate that according to the explicit language of the statute, the [October] 2011 amendment to Penal Code section 4019 applies only to crimes that were 'committed on or after October 1, 2011.' (Pen.Code, § 4019, subd. (h).)" (*Id.* at p. 399.)

Similarly, the court in *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 51 (*Rajanayagam*) rejected an argument that the second sentence of section 4019, subdivision (h), "implies any days earned by a defendant after October 1, 2011, shall be calculated at the rate required by the current law, regardless of when the offense was committed." It concluded that such an interpretation would render meaningless the language in the first sentence (*ibid.*), which provides that the changes to the accrual of presentence conduct credit "shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011." (§ 4019, subd. (h).) The court in *Rajanayagam* concluded that adopting the defendant's interpretation would violate an elementary rule requiring courts, if possible, to ascribe

16

meaning to every word, phrase, and sentence of a statute and to avoid interpretations that render some words superfluous.  (*Rajanayagam*, at p. 51.)

We too conclude that defendant is not entitled to the enhanced presentence conduct credits provided in the October 2011 amendment for the time that he was in custody after October 1, 2011, because of any perceived ambiguity in subdivision (h) of section 4019.  (Accord, *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1552-1553.)

DISPOSITION

The judgment is affirmed.

_____
Márquez, J.

WE CONCUR:

_____
Elia, Acting P.J.

_____
Bamattre-Manoukian, J.

17