Filed 1/15/15  P. v. Edwards CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064483 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FSB802052) |
| HOWARD JEROME EDWARDS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino, Kyle S. Brodie, Judge.  Affirmed in part, reversed in part and remanded with instructions.

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles Ragland, Melissa Mandel and Laura Baggett, Deputy Attorneys General, for Plaintiff and Respondent.

Howard Jerome Edwards appeals from the judgment entered after resentencing on remand pursuant to this court's opinion in *People v. Foster* (Dec. 19, 2012, D060669) [nonpub. opn.] (*Foster II*). Specifically, Edwards asserts: (1) the trial court erred in ordering restitution under Penal Code section 1202.4;[1] (2) the trial court erred in calculating his presentence custody credits under a former version of section 2900.5;[2] (3) the trial court erred in calculating his presentence conduct credits under a former version of section 4019;[3] and (4) the abstract of judgment should be corrected to reflect the dispositions in our opinions in *People v. Foster* (Apr. 29, 2011, D056830) [nonpub. opn.] (*Foster I*) and *Foster II*, and two additional clerical errors. We will affirm in part, reverse in part and remand with instructions.

I.

FACTUAL AND PROCEDURAL BACKGROUND

This is the third appeal following Edwards's conviction on multiple counts of grand theft of personal property, conspiracy to commit grand theft, multiple counts of

---

[1]  All further undesignated statutory references are to the Penal Code.

[2]  As explained at part II.B.1., *post*, because of the People's concession, the actual language of the statute is not at issue. In any event, the version of former section 2900.5 that was in effect at the time of the sentencing can be found at Statutes 2011, chapter 15, section 466, operative October 1, 2011 (former section 2900.5).

[3]  *People v. Brown* (2012) 54 Cal.4th 314 instructs that a defendant is to receive section 4019 presentence custody credit based on the law in effect *when the defendant served the time* that is to be credited. (*Brown*, at p. 322.) Because Edwards's time served at issue here occurred during September 2008, in this opinion we look at the version of section 4019 in effect in 2008 — Statutes 1982, chapter 1234, section 7 (former § 4019).

forgery, identity theft, and offering a forged instrument for filing.  In the first appeal, we reversed the convictions on four counts based on instructional error and remanded with directions that the trial court determine presentence credits under former section 4019 and the abstract of judgment be corrected in certain respects.  (*Foster I*, *supra*, D056830.)  In the second appeal, we reversed the sentencing order (on the basis the trial court had prejudicially denied Edwards's request to continue the sentencing hearing in order for him to retain private counsel) and remanded with instructions that the matter be set for a new sentencing hearing and the abstract of judgment again be corrected.  (*Foster II*, *supra*, D060669.)[4]

Following the remand in *Foster II*, *supra*, D060669, the court conducted a sentencing hearing at which Edwards received a lengthy prison term, and the court imposed various statutory fees and fines and awarded restitution and certain credits. Edwards timely appealed from the trial court's judgment in the remanded proceedings. As introduced *ante*, Edwards raises specific contentions regarding restitution, presentence custody credits and the need for corrections to the abstract of judgment.  We will address his arguments in turn, after setting forth additional facts relevant to each issue.

---

[4]     On our own motion, we take judicial notice of the opinions in *Foster I*, *supra*, D056830, *Foster II*, *supra*, D060669, and the clerk's transcript in *Foster I*.  (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a); *Cuccia v. Superior Court* (2007) 153 Cal.App.4th 347, 350, fn. 2.)

3

A.      *Restitution*

1.      *Background*

In three separate series of transactions, Edwards and his codefendant borrowed large sums of money in other people's names in order to buy and sell real estate and automobiles.  (*Foster I*, *supra*, D056830.)  Following the remand in *Foster I*, as relevant to the issue of restitution, the court ordered Edwards to pay $560,000 to Countrywide Home Loans and $675,000 to LandSafe Title Company.  (§ 1202.4.)  After the reversal of the judgment following sentencing and the remand in *Foster II*, *supra*, D060669, the court held a series of hearings in July 2013 related to the required resentencing.

At the July 10, 2013 hearing, Edwards's attorney asked the court to reconsider the amount of restitution previously ordered on the basis that certain real property involved in one of the three series of transactions had been sold and significant funds had been paid by the new buyer, arguably resulting in less financial loss for the victim and an offset to the previously ordered restitution.  The court ruled that because no evidence had been presented (merely argument of counsel), the court would "reserve jurisdiction over the issue of victim restitution under . . . section 1202.46,"[5] telling counsel the court

_____

[5]      Section 1202.46 provides in relevant part:  "[W]hen the economic losses of a victim cannot be ascertained at the time of sentencing pursuant to subdivision (f) of Section 1202.4, the court shall retain jurisdiction over a person subject to a restitution order *for purposes of* imposing or *modifying restitution* until such time as the losses may be determined."  (Italics added.)

would revisit the issue in the event counsel submitted "specific documentary support" and requested a hearing on the issue. Following discussions on other sentencing issues, the court continued the hearing, asking the parties to submit memoranda on one of these other issues.[6]

The People's sentencing memorandum discussed only the requested issue. Edwards's sentencing memorandum discussed the requested issue and briefly mentioned restitution.[7] In addition, Edwards attached to his memorandum two exhibits that he contended supported his argument that he was entitled to an offset to the prior restitution award because one of the victims had received cash following the sale of certain real property.

The sentencing hearing proceeded on July 26, 2013. As an introduction to the issue of restitution, the court stated: "There were previous estimates of the l[oss] submitted by the victims in the appeals, the two appeals, that have been heard. There's been no challenge to that particular part of Mr. Edwards' sentencing." The court and both counsel then discussed the exhibits attached to Edwards's sentencing memorandum. In

---

6    Though not in contention in this appeal, the court requested briefing on issues related to section 115 and the Criminal Justice Realignment Act of 2011.

7    Beneath the caption, "On the issue of restitution the court asked if we had any evidence to prove whether the property located at 5723 Diablo Pl., Fontana, CA ever sold and if so what was the sale price," Edwards's presentation provided in full: "Please see the attached documents which establish that the subject property sold on March 18, 2008 to a Thelma Aviles for the sales price of $352,000.00. We attach these documents thereto [sic] and incorporate them as exhibits herein." (Bolding and some capitalization omitted.)

5

particular, the court identified certain problems: (1) the exhibits were not authenticated; and (2) one of them, entitled in part "Ownership History Report" (some capitalization omitted), contained only a parcel number with no street address. After hearing from both attorneys, the court explained that Edwards's evidentiary presentation was lacking — to which Edwards's attorney suggested, "[W]ell, then what I think we should do . . . is if the court is not clear where the money went, and . . . where the money is, then we should separate this and actually have a restitution hearing on this issue." The prosecutor agreed, and the court stated: "I think that's probably right, and I'm willing to do that. And there's continuing jurisdiction over restitution issues anyway, so that's something we could always revisit." Based on the People's offer of proof at an earlier hearing, the court also invited the People to present their evidence of the additional restitution the People would be seeking.

Although Edwards's attorney understood that the court had ordered "no restitution at this point," the court promptly corrected his misunderstanding, stating: "I have no reason to question the restitution that's previously been ordered." Based on *the evidence* that had been presented at the original sentencing hearing — specifically, according to the court, the "prima facie evidence of th[e victims'] loss" — the court ordered the same restitution as at the original sentencing hearing.[8] Consistently, at the conclusion of the July 26 hearing, the court repeated: "For the restitution issue, as I indicated, I am

---

[8]    The court ordered restitution fines of $560,000 to Countrywide Home Loans and $675,000 to LandSafe Title Company.

imposing the [same amount of] restitution [as in the] order previously made, but also both counsel have indicated the [*sic*] *further* restitution hearing is contemplated here." (Italics added.) The court declined to set a specific date, instead suggesting to counsel that they talk to each other, decide on what evidence will be needed, agree on a date for the hearing and call the court to schedule the hearing.

On appeal, Edwards contends the award of restitution should be reversed, because (1) he was denied a full and fair hearing, since the court did not allow him to dispute the determination of the amount of restitution, or alternatively, (2) by proceeding with the hearing while acknowledging the need to take additional evidence of a potential offset, the restitution order was arbitrary and capricious. The facts and the contentions in support of both arguments are essentially the same.

The People misunderstand Edwards's position. Believing that Edwards is challenging the court's failure to conduct the new restitution hearing (at which Edwards could present evidence of his alleged offset and the People could present their evidence of additional losses by the victims), the People argue that by noticing this appeal prior to the hearing, Edwards divested the court of jurisdiction to conduct the new restitution hearing.[9] We do not read Edwards's brief as the People do; and at oral argument, Edwards's attorney confirmed Edwards was challenging the restitution ordered on July 26, 2013, not the failure to conduct a further evidentiary restitution hearing.

---

[9]     The court filed the judgment on appeal on July 26, 2013, Edwards noticed the present appeal two weeks later on August 9, 2013, and the court set the new restitution hearing for November 15, 2013. At the new hearing, the court ruled it lacked jurisdiction due to the pendency of this appeal.

7

2.    *Analysis*

We review the trial court's restitution order for abuse of discretion.  (*People v. Giordano* (2007) 42 Cal.4th 644, 663.)  Thus, we must determine whether the restitution ordered here " ' "falls outside the bounds of reason" under the applicable law and the relevant facts.' "  (*Ibid.*)

The People have the initial burden of presenting a prima facie case for restitution.  (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).)  The People presented their prima facie case at the initial sentencing hearing in September 2011 following Edwards's conviction.  At the July 26, 2013 sentencing hearing, the court based its restitution order on the "prima facie evidence of [the victims'] loss" that the People presented at the original (Sept. 2011) sentencing hearing.  Although that evidence is not in the record on appeal,[10] we have no reason to question its substantiality or Edwards's opportunity to have rebutted it.[11]  As the court expressly advised counsel at the start of the hearing: "There were previous estimates of the l[oss] submitted by the victims in the appeals, the two appeals, that have been heard.  There's been no challenge to that particular part of Mr. Edwards' sentencing."   Further, Edwards did not object to the use of this evidence at any of the July 2013 hearings, and Edwards does argue otherwise on appeal.  Instead, Edwards claims he was denied a fair hearing based on what he describes as (1) "the

_____

[10]    Edwards has the burden of presenting a complete record.  (*People v. Slocum* (1975) 52 Cal.App.3d 867, 879.)

[11]    A defendant is entitled to rebut the prosecution's prima facie case for restitution.  (*Millard*, *supra*, 175 Cal.App.4th at p. 26.)

8

court[']s acknowledge[ment] that the circumstances had changed since its original order," (2) the "prosecutor['s] implicit[] acknowledge[ment] that he was unable to make a prima facie showing of economic loss" and (3) the "anticipation of a future restitution hearing that was never held."  We disagree with Edwards's view of the record on appeal.

The court's "acknowledg[ment] that circumstances had changed" was based entirely and exclusively on Edwards's and the People's arguments (which at best might be considered offers of proof) related to what each of them anticipated proving at a future restitution hearing.  Following these arguments, the trial court agreed to hold a further hearing at which evidence could be presented.[12]  Arguments of counsel, of course, are not evidence (*People v. Friend* (2009) 47 Cal.4th 1, 84), and there is no indication the trial court considered anything other than the People's prima facie evidence in setting the amount of restitution.

What Edwards characterizes as the "prosecutor['s] implicit[] acknowledge[ment] that he was unable to make a prima facie showing of economic loss" related only to evidence obtained after the original restitution order — evidence of *additional* losses suffered by the victims for which the People would be seeking *additional* restitution. Edwards has not challenged the prima facie showing of economic loss that was presented at the September 2011 sentencing hearing on which the current restitution order is based.

Finally, the "anticipation of a future restitution hearing that was never held" does not suggest the court abused its discretion in awarding the restitution at issue.  The fact

---

[12]    The further hearing was calendared, but did not proceed due to Edwards's appeal from the judgment in the interim, as described at footnote 9, *ante*.

that such a hearing may not have taken place yet is irrelevant to the issues Edwards raises in this appeal — issues that are being decided based on the evidence and argument of counsel properly before the court at the time of the ruling. Indeed, the fact that the court retained jurisdiction to conduct such a future restitution hearing (see § 1202.46) indicates that Edwards has not been prejudiced by the restitution ruling he challenges here.[13] (Cf. *People v. Enos* (2005) 128 Cal.App.4th 1046, 1049-1050 [to establish reversible error under § 1202.4, defendant must show prejudice].)

Because the trial court did not abuse its discretion in awarding restitution, that part of the judgment is affirmed.

B.     *Presentence Custody Credits*[14]

1.     *Background*

Edwards was first taken into custody on September 22, 2008, in Locust Grove, Georgia, based on an arrest warrant issued in San Bernardino County, California. San Bernardino County agents picked up Edwards in Georgia on September 24, 2008,

---

[13]     Nothing in this opinion is intended to affect either party's right to request "a future restitution hearing" once the remittitur issues; we express no view on the merits of any such request, the substance of any potential presentation or any possible outcome.

[14]     Edwards's unopposed motion for judicial notice filed July 18, 2014 (directed to a portion of the reporter's transcript in *Foster I*, *supra*, D056830), and the People's unopposed motion for judicial notice filed June 26, 2014 (directed to a page of the clerk's transcript in *Foster I*), are granted. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a); *Stephenson v. Drever* (1997) 16 Cal.4th 1167, 1170, fn. 1 [appellate court may take judicial notice of court records involving the same parties].) By order filed March 11, 2014, we previously granted Edwards's first motion for judicial notice (directed to a postsentencing order of the trial court in this case and to a portion of the reporter's transcript in *Foster II*, *supra*, D060669).

returned him to California and booked him into local custody on September 25, 2008. Edwards was incarcerated again on January 28, 2009, where the parties agree he remained in local custody through the date of the initial sentencing hearing on July 31, 2009. Finally, Edwards was incarcerated during the period from July 31, 2009 (the date of the original sentencing hearing), through July 26, 2013 (the date of the sentencing hearing that preceded the judgment from which this appeal was taken).

A defendant like Edwards who is sentenced to state prison is entitled to credit against the term of imprisonment for all days in custody prior to the sentencing (former § 2900.5, subd. (a)[15]), plus additional presentence credits unless the prisoner has refused to satisfactorily perform assigned labor and comply with rules and regulations (former § 4019, subds. (b) & (c)[16]). We will refer to the credit under former section 2900.5 as "actual credit" and the credit under former section 4019 as "conduct credit."

---

[15]    The language of the statute applicable to this appeal is the same in current and former section 2900.5, subdivision (a) and provides in relevant part: "In all felony and misdemeanor convictions, . . . when the defendant has been in custody, . . . all days of custody of the defendant . . . shall be credited upon his or her term of imprisonment . . . ." (Compare Stats. 2011, ch. 15, § 466, operative Oct. 1, 2011, with Stats. 2013, ch. 59, § 7, effective Jan. 1, 2014.)

[16]    Prior to January 25, 2010, subdivisions (b) and (c) of former section 4019 provided in relevant part that for "each six-day period in which a prisoner is confined in or committed to" a local facility, one day is deducted from the period of confinement for performing assigned labor, and one day is deducted from the period of confinement for satisfactorily complying with the rules and regulations of the facility. (Stats. 1982, ch. 1234, § 7, p. 4553.) In addition, former section 4019, subdivision (f) provided in part that "if all days are earned under this section, a term of six days will be deemed to have been served for every four days spent in actual custody." (*Id.* at p. 4554.)

11

The abstract of judgment indicates that Edwards is entitled to 1,848 total days of custody credit — 1,718 days of actual credit and 130 days of conduct credit. The trial court's calculation of presentence credits indicates Edwards did not begin receiving credits until the date of his booking in California on September 25, 2008. Arguing that he is entitled to credit as of the date of his arrest in Georgia on September 22, 2008, Edwards asks that we modify the judgment to reflect an additional three days to the actual credits (former § 2900.5) and an additional two days to the conduct credits (former § 4019) previously awarded.

Although the People's brief opposes Edwards's requests, the day before oral argument the Attorney General conceded the validity of the three additional days of actual credits pursuant to *In re Watson* (1977) 19 Cal.3d 646, 651-652. We agree, accept the concession, reverse that portion of the judgment dealing with the actual credits, and remand with instructions that the court recalculate the former section 2900.5 actual credits to include an additional three days (Sept. 22, 23 and 24, 2008).

The People continue to oppose Edwards's request for an additional two days of conduct credits. The two days of custody at issue are September 22 and 23, 2008, during which time Edwards was in the exclusive custody and control of the Georgia authorities. According to the People, former section 4019 was intended as an incentive to a prisoner to cooperate and behave well *only* once the prisoner was detained in California or by a California custodian. In this case, the People emphasize, Edwards was not under the control of a California custodian until September 24, when the San Bernardino County

agents picked up Edwards in Georgia. We disagree with the limitation the People read into former section 4019.

2. *Analysis*

"The failure to award an adequate amount of credits is a jurisdictional error which may be raised at any time." (*People v. Acosta* (1996) 48 Cal.App.4th 411, 428, fn. 8 [actual credits and conduct credits].) We will apply the de novo standard of review, because our analysis requires interpretation and application of a statute to undisputed facts. (*People v. Salcido* (2008) 166 Cal.App.4th 1303, 1311.)

" 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context . . . .' " (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) Importantly, "[t]he plain meaning controls if there is no ambiguity in the statutory language." (*Ibid.*)

For purposes of determining conduct credits, the benefits provided in former section 4019, subdivisions (b) and (c) apply to "all days of custody *from the date of arrest to the date on which the serving of the sentence commences*." (Former § 4019, subd. (a)(1), italics added; see *People v. Bravo* (1990) 219 Cal.App.3d 729, 735 ["Conduct credits shall be computed on the full period of custody *commencing with the day of arrest*." (Italics added.)].)

Relying on an entry in the probation report that was prepared in support of the original sentencing (which we reversed in *Foster I*, *supra*, D056830), the People suggest Edwards was arrested on September 25, 2008. We do not read the report as definitively as do the People. Rather, the dates under the heading "Arrest Date" in the probation

13

report correspond only to the dates of Edwards's bookings in California.[17]  Although in many circumstances the booking date is the arrest date, the record here suggests to the contrary.  In reaching this conclusion, we are guided by the language of section 834, which defines an arrest as "taking a person into custody, in a case and in the manner authorized by law"; and section 835, which instructs that "[a]n arrest is made by actual restraint of the person, or by submission to the custody of an officer."  (See *People v. Freund* (1975) 48 Cal.App.3d 49, 54 [where probable cause existed, defendant's placement in police patrol car for three hours 45 minutes "constituted an arrest"].)

In April 2008, the trial court issued an arrest warrant for Edwards, which an investigator from the prosecutor's office entered into "the [National Crime Information Center] system, which goes nationwide."  A detective from the Henry County Police Department in McDonough, Georgia, took Edwards into custody based on the California arrest warrant.  The Georgia detective then contacted the California prosecutor's investigator "*on September 22nd, 2008*," and advised the investigator that the Georgia detective and his agency "*had arrested* [*Edwards*]."  (Italics added.)  Consistently, at trial the Georgia detective acknowledged he had "apprehended Mr. Edwards."  On September 24, 2008, the California prosecutor's investigator and his partner flew to Georgia and met with the detective (and conducted further investigation), ultimately

---

17    According to the probation report, Edwards was *booked* on September 25, 2008 (after he was extradited from Georgia); he was released on December 10, 2008; and he was *booked* again on January 28, 2009.

14

returning with Edwards to California, where Edwards was booked into local custody on September 25, 2008.

Based on the foregoing, for purposes of former section 4019 conduct credits, Edwards was under arrest and in custody in Georgia as of September 22, 2008, and he was under arrest and in custody in California on September 25, 2008. Thus, because there is no indication that Edwards's *entire* custody was not lawfully authorized — and the People do not contend otherwise — he was under "arrest" as that term is defined in section 834 commencing September 22, 2008.

*People v. Buckhalter* (2001) 26 Cal.4th 20 teaches that former section 4019 conduct credit "focuses primarily on encouraging minimal cooperation and good behavior by persons temporarily detained in local custody before they are convicted, sentenced, and committed on felony charges." (*Buckhalter*, at p. 36.) From this, the People present two arguments. In their brief, the People argue that former section 4019 encouraged such cooperation and behavior *only* for the benefit of California custodians — emphasizing that, during the two days at issue in this appeal, Edwards was in the exclusive custody of the state of Georgia. At oral argument, the People contended that, since the purpose of the statute was to reward a detained person's behavior, "how can an actor change his behavior if he doesn't even know of the promised reward?" — implying that, by being in Georgia, Edwards could not have known about former section 4019 and, thus, is not entitled to its benefits. Based on the statutory language, however, neither argument is persuasive. The language of former section 4019 requires *only* that the prisoner be "confined in or committed to a county jail, industrial farm, or road camp, or

15

any city jail, industrial farm, or road camp." (*Id*., subd. (a)(1).) The statute neither states nor implies whom the custodian must be or whether the prisoner must be aware of this benefit in order to receive it; and we will not infer any such requirements. The crucial element is "encouraging minimal cooperation and good behavior" while in local custody (*Buchalter*, at p. 36), not where or under whose control the prisoner is in local custody.

Accordingly, for purposes of calculating the presentence conduct credits under former section 4019, the trial court erred in not including in the calculation the two days Edwards was under arrest and in custody in Georgia before the San Bernardino County agents picked him up. We reverse that portion of the judgment and remand with instructions that the court recalculate the former section 4019 conduct credits to include an additional two days (Sept. 22 and 23, 2008).

C.     *Abstract of Judgment*

       1.     *Background*

       In *Foster II*, we ordered the abstract of judgment to be corrected as follows:

       "The abstract of judgment for Edwards is ordered corrected to indicate
       (1) counts 7-13, 16 and 18 occurred in 2006, (2) counts 15, 28-45, and 48
       occurred in 2007, (3) counts 46 and 47 occurred in 2008, (4) the '$50' court
       security fee is composed of a $20 fee under Penal Code section 1465.8,
       and a $30 court facilities assessment fee under Government Code
       section 70373, (5) paragraph 12 of the abstract should be changed to
       indicate that the sentence was imposed 'at resentencing per decision on
       appeal' (box 12b), (6) paragraph 13 of the abstract should be changed to
       indicate that Edwards was awarded 262 actual days plus 262 local conduct
       days, plus an additional 781 actual days in state prison, for a total of 1,305
       days credit for time served, and (7) paragraph 13 of the abstract should be

16

changed to indicate that the sentence was actually imposed on September 20, 2011." (*Foster II*, *supra*, D060669.)[18]

2. *Analysis*

Edwards argues that the current abstract of judgment (following the July 26, 2013, sentencing hearing) does not reflect the corrections we previously ordered. Additionally, Edwards asks that the abstract be further corrected as follows *as to each offense*: (a) the "Date of Conviction" is shown as "07-26-13," whereas Edwards was convicted on June 5, 2009; and (b) Edwards is shown as having been convicted following a court trial, whereas he was convicted following a jury trial. The People concede that all of these clerical errors — the seven ordered in *Foster II*, *supra*, D060669, and the two identified in this paragraph — should be corrected.

We independently have reviewed the record and agree that the abstract of judgment should be amended. (*People v. Hong* (1998) 64 Cal.App.4th 1071, 1075-1076 [appellate court has inherent power to correct clerical errors and to order the abstract of judgment amended].) However, our review also discloses that Edwards was convicted on *June 8*, 2009 — not *June 5*, 2009, as originally suggested by Edwards and originally conceded by the People.[19] Further, item (5) from *Foster II*, *supra*, D060669 — amending the abstract to indicate that the sentence was imposed " 'at resentencing per

---

[18]    Notably, in *Foster I*, we ordered the same corrections for items (1) through (4), though apparently they were not made. (*Foster I*, *supra*, D056830.)

[19]    We requested and received Government Code section 68081 supplemental briefing regarding the date of Edwards's conviction. The People and Edwards now agree that the correct date of conviction is *June 8*, 2009.

17

decision on appeal' " — appears to have been accomplished. Finally, because item (6) from *Foster II* will be changed in accordance with the court's calculation of actual credits and conduct credits upon remand as directed in part II., *ante*, item (6) does not need to be amended as requested due to clerical error.

## DISPOSITION

Those portions of the judgment in which the superior court awarded actual credits under former section 2900.5 and conduct credits under section 4019 (see fn. 15, *ante*) are reversed, and the court is ordered to recalculate Edwards's former section 2900.5 credits and former section 4019 credits consistent with this opinion and to amend the abstract of judgment accordingly. In all other respects the judgment is affirmed.

The superior court is further ordered to correct the abstract of judgment to reflect: (1) counts 7-13, 16 and 18 occurred in 2006; (2) counts 15, 28-45 and 48 occurred in 2007; (3) counts 46 and 47 occurred in 2008; (4) the "$50" court security fee is composed of a $20 fee under section 1465.8, and a $30 court facilities assessment fee under Government Code section 70373; (5) the sentence was imposed on September 20, 2011; (6) the "Date of Conviction" of each count is June 8, 2009; and (7) Edwards was convicted following a jury trial.

After the abstract of judgment is amended and corrected, the superior court is ordered to forward a copy to the Department of Corrections.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.