Filed 11/8/24  P. v. Fernandez CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B323703 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA107569) |
| v. | |
| SERGIO FERNANDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed as modified, remanded with directions.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

———————————

# INTRODUCTION

Appellant Sergio Fernandez appeals from a judgment of conviction for eight counts of lewd or lascivious act with a child under 14 years old with the multiple victim circumstance under the One Strike Sex law, and three counts of oral copulation or sexual penetration of a child under 10 years old.

Pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), Fernandez's appellate counsel requested that we review the record and determine whether any arguable issues exist on appeal. We have reviewed the entire record and find no arguable issues, other than an error in awarding presentence conduct credits. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

I. Facts

   *A. Prosecution case*

      1. Natalee N.

Natalee N. was Fernandez's cousin. When she was seven or eight years old, she would go to Fernandez's home.[1] He was 37 or 38 years old at the time. Fernandez had two daughters, Diana and Marisol. Diana was one year older than Natalee N. Marisol was two to three years younger.

On one occasion, Natalee N. spent the night at Fernandez's home when she was between the ages of six and nine years old. She slept in Marisol's room, where they had separate beds. Natalee N. remembered being woken by someone lifting the blankets off her. She opened her eyes and saw Fernandez taking off her pants and underwear. He then put his head down in her

---

[1]     Natalee N. was 16 years old when she testified at trial.

vaginal area. Natalee N. felt Fernandez's mouth and tongue on her clitoris and inside her vagina. She felt movement, vibration, and pain. She felt uncomfortable and violated. He also inserted his finger inside of Natalee N.'s vagina, removed it, and reinserted it. After completing these acts, Fernandez put Natalee N.'s clothes back on her.

While the incident was occurring, Natalee N. did not say anything to Fernandez because she feared him. She did not know what was happening and did not know what to do. Natalee N. remained frozen in disbelief. She pinched her left hand to see if she was dreaming.

When Natalee N. woke up the next morning, she had a scar on her hand where she had pinched herself. This scar proved to Natalee N. that the incident occurred. But Natalee N. did not tell anyone about the incident because she did not want to believe it really happened. Natalee N. thought if she told anyone about the incident she would ruin her relationship with her family.

When she was 12 or 13,[2] Natalee N. told her best friend Melanie about what happened with Fernandez. She later told her mother, Susanne. Natalee N. talked to the police about the incident about four or five years after it occurred.

2. Ginny H.

Ginny H. was Natalee N.'s cousin. According to Ginny H., Fernandez was her uncle. He was married to Ginny H.'s aunt Marisonia. In 2020, Ginny H. was living in Los Angeles with her father and her aunt Suzie, who was Natalee N.'s mother.

---

[2] Natalee N. testified that three or four years before the trial, she told her best friend about the incident. She was 16 years old when she testified. Three to four years before the trial would have made her 12 or 13 years old.

In 2009, Ginny H. would go to Fernandez's home in Pasadena. On one occasion when Ginny H. was about eight or nine years old,[3] Marisonia was babysitting her with Diana, who was four or five years younger than her. Ginny H. and Diana were playing in the bedroom that Fernandez shared with Marisonia. Fernandez joined them. He asked if they could play a different game. He got on the bed with Ginny H. and Diana and pulled down their pants. Fernandez pulled Ginny H.'s underwear to the side and put his tongue on her vagina. Fernandez was over 18 years old at the time.

Ginny H. did not immediately tell anyone about the incident. She thought it was a game. She realized it was not a game when she was in middle school or high school. When Ginny H. was 14 or 15 years old, she had learned in "sex ed" class what was right and what was wrong. At that point, she believed what Fernandez did was illegal and wrong. Even after the sex ed class, she did not immediately tell anyone. She did not want the incident to affect her family.

Suzie later approached Ginny H. about the incident and told her that something "really bad" happened to Natalee N. Suzie initially told her that a family member "abused" Natalee N. When Ginny H. asked what happened, Suzie replied that Uncle Sergio did something to her. Ginny H. remained silent for 10 minutes. She did not know if it would be a good idea to tell Suzie about what happened to her. Ginny H. did not want to get involved. She ultimately revealed what happened, but since then, her father's side of the family no longer talks to her.

---

[3] Ginny H. testified that she was born in December 1999. She was 22 years old when she testified at trial.

### 3. Lauren R.

Marisonia, known as Sonia to Lauren R., started babysitting her from when she was born.[4]  Marisonia was also the babysitter for Lauren R.'s two older brothers.  Marisonia was married to Fernandez.  Lauren R. had good memories of Marisonia as her babysitter and dark and uncomfortable memories about Fernandez.

When Lauren R. was between five to nine years old,[5] Fernandez called her to go up a ladder to the attic in their house.  As she was climbing up the ladder, she felt wetness on her neck.  Fernandez was kissing her neck.  She felt his beard against her neck.

When Lauren R. was about seven years old, she lived in a house on Ramona Street.  On one occasion, Fernandez took her out of a car, carried her into the house to her bedroom, and tucked her into bed.  Lauren R. felt uncomfortable throughout her body.

On another occasion, Lauren R. was in Marisonia's bedroom with her middle brother Scotty.  Fernandez was also in the room, sitting on a chair.  Lauren R. was sitting on Fernandez's lap when he placed his hand under her pants and underwear and started rubbing her vagina.  Lauren R. felt uncomfortable.  She looked at Scotty to see if he noticed what Fernandez was doing.  She felt confused and embarrassed.  She

---

[4]     Michele R. testified that Lauren R. is her daughter, and she was born in October 1998.

[5]     At the preliminary hearing, Lauren R. testified that she was five or six years old.  At trial, she testified that she was seven or nine years old.

also felt afraid because she did not know what was going to happen.

Lauren R. also remembered an incident when she was between seven and nine years old. She was watching television in Marisonia's bedroom. She was laying down next to Fernandez on the bed. They were under the covers and Fernandez moved her hand onto his penis. Afterwards, Fernandez told Lauren R. to go wash her hands and made a "shush" gesture. When she went to the bathroom, she observed her hands smelled like Ricola cough drops.

Lauren R. described a memory when she was playing hide and seek in the room that Marisonia's sister would use. Fernandez found Lauren R. in the room. He pulled down Lauren R.'s pants and placed her on the bed. She felt wetness from his tongue on her vagina. Lauren R. was between nine to 10 years old.

On another occasion when Lauren R. was between 11 and 13 years old, she was sleeping on a pullout couch in Marisonia's house. In the middle of the night, Fernandez touched her vagina.

Lauren R. eventually told her friends about the incidents. Soon after, when she was 13, she also told her father. When Lauren R. was in seventh or eighth grade, police officers pulled her out of class and asked her about what happened. Lauren R. did not immediately disclose the incidents because she wanted to protect Marisonia. Lauren R. also did not want others to see her differently because of the incidents.

4. Jody Ward

Psychologist Jody Ward testified about Child Sexual Abuse Accommodation Syndrome. She described it as behavior

6

exhibited by children who have been sexually abused within an ongoing relationship.

According to Ward, children who have been abused within an ongoing relationship do not tend to report the abuse immediately because of loyalty to the abuser. Ward testified that five components of the syndrome exist, including secrecy, helplessness, entrapment and accommodation, delayed unconvincing disclosure, and retraction or recantation.

First, according to Ward, secrecy refers to the abuse occurring in secret with only the victim and perpetrator present, as well as the victim keeping the secret of the abuse for a long period of time. The victim does not need to be threatened to keep the abuse secret. The shameful nature of the abuse and the concern of breaking up the family motivate the secret-keeping. Additionally, a child who is abused at a very young age does not realize the abuse was wrong until he or she gets older. She explained that young children lack sexual awareness.

Second, helplessness refers to the power imbalance between the adult perpetrator and the child victim. Children are completely dependent on adults. They fall prey to sexual abuse easily and are unable to escape from it.

Third, entrapment and accommodation relate to the ability of the perpetrator to return to the child victim and continue abusing him or her. Victims are trapped because of the secrecy, lack of reporting, and helplessness they experience. They are forced to accommodate the abuse by finding other ways to cope with it. They may acquiesce to the abuse to receive the positive aspects of the relationship, including care, concern, and provision of physical needs or financial needs for the family. Victims might also submit to the abuse to protect other children or siblings from

it. They might also submit to the abuse because they believe it will not occur again. Outsiders do not see that the abuser is satisfying the victim's needs or that the victim is concerned with breaking up the family.

Fourth, delayed unconvincing disclosure involves the child victim waiting until adulthood to report the abuse. The report will not include details when revealed. The victim will disclose additional details once he or she feels more comfortable with the person receiving the information. If that person is not receptive to it, the victim is less likely to disclose sexual abuse in the future.

Fifth, victims may minimize or recant their allegations if they see the perpetrator whom they love facing serious consequences from their disclosure.

5. Adam Rosen

Adam Rosen was a detective for the Pasadena Police Department, Special Victim's unit. He testified that Fernandez's birthday is August 20, 1970.

B. *Defense case*

1. Sergio "Kevin" Fernandez

Sergio Fernandez is Fernandez's son. He goes by the name Kevin.[6]

Kevin had known Lauren R. because his mother Marisonia was her babysitter. He was very close with Lauren R.'s brother Scotty.

Kevin never observed Fernandez engage in physical contact with Lauren R., other than hugging. He never observed

---

[6] We refer to him as Kevin to avoid confusion because he shares the same first and last name as Fernandez.

8

Fernandez touch Lauren R. in an inappropriate sexual way. Kevin did not recall Lauren R. ever spending the night at their house. He would occasionally spend the night at Lauren R.'s house.

Kevin did not recall his mother leaving any child alone in the house with Fernandez. Kevin only remembered one occasion when she left Lauren R. with him. They were outside by the pool while Kevin's mother went to the store for 15 minutes.

Kevin denied that their house had any attic that is accessed by a ladder. He knew only of a small space under the roof.

Kevin described Natalee N. as his second or third cousin.[7] He did not remember Natalee N. ever being left alone with Fernandez.

Kevin had a close relationship with his cousin Ginny H. She would rarely come to their house, although she did stay for a couple of months. Kevin never witnessed inappropriate conduct between Fernandez and Ginny H. She never told him that something was going on between his father and her. Ginny H. left the country when she was 14 years old.

2. Sergio Fernandez

According to Fernandez, Ginny H. was his brother-in-law's daughter. He knew her as Lucilita. Fernandez very rarely saw her when she visited his home because he was hardly at home. He denied ever touching Ginny H. Fernandez said he only hugged Ginny H. in front of her mother when she was two years old. He denied ever touching Ginny H. with his mouth and hands

---

[7]    The witnesses never clarified how Fernandez was Natalee N.'s cousin and Ginny H.'s uncle even though Ginny H. described them as cousins. Kevin described the confusion with Natalee N.'s relation to him as strange.

9

as she testified. Fernandez believed that Ginny H. made up her claim against him because she suffered serious trauma when her mother died.

Fernandez's wife was Lauren R.'s babysitter. Fernandez stated he had a small attic in his house. He described it as three feet high, which was tall enough only to crawl. He denied ever asking Lauren to climb a ladder to the attic. Fernandez denied ever exposing his penis to Lauren, placing his lips or tongue on her vagina, or inserting his fingers in her vagina. He also denied ever having Lauren R. touch his penis.

Fernandez stated that Natalee N. was not telling the truth in her testimony. He denied doing anything sexual to her. Fernandez testified that he would not do anything sexual to her because she was an innocent child and he has always respected people, especially women, because of where he was born.

3. Marisonia Fernandez

Marisonia was Fernandez's wife.[8] Marisonia was the babysitter for Lauren R. and her brother Scotty. She never had Fernandez act as a substitute babysitter for her. Marisonia never left the children she babysat alone with Fernandez at their house. Lauren R. never confided in Marisonia that something was going on between Fernandez and her.

Natalee N. was the daughter of Marisonia's cousin. On one occasion, Natalee N. spent the night at Marisonia's house. Natalee N. never told Marisonia anything that happened between Fernandez and her. Marisonia never saw a change in Natalee N.'s demeanor after spending the night.

---

[8] We refer to her as Marisonia to avoid confusion, since she and Fernandez share the same last name.

Marisonia said she never babysat Lucilita, her brother's daughter. Lucilita occasionally went to Marisonia's home accompanied by her father or mother Jenny. Lucilita was never left alone. Marisonia was not aware of Fernandez ever interacting with Lucilita by herself. Lucilita never slept over when she was younger. She stayed at Marisonia's house when she was 18 or 19 years old. Lucilita never expressed any anger to Marisonia over Fernandez.

II. Procedure

   A. *The verdicts*

   The jury found Fernandez guilty of five counts of lewd or lascivious acts on a child under 14 years old against Lauren R. (Pen. Code, § 288, subd. (a);[9] counts 1 to 5), oral copulation or sexual penetration of a child under 10 years old (§ 288.7, subd. (b); count 6) and lewd or lascivious acts on a child under 14 years old (§ 288, subd. (a); count 7) against Ginny H., and two counts of oral copulation or sexual penetration of a child under 10 years old (§ 288.7, subd. (b); counts 8 and 9) and two counts of lewd or lascivious acts on a child under 14 years old (§ 288, subd. (a); counts 10 and 11) against Natalee N.

   For each violation of section 288, subdivision (a), as charged in counts 1, 2, 3, 4, 5, 7, 10, and 11, the jury found true the multiple victim circumstance under the One Strike Sex law (§ 667.61, subds. (b) & (e)).

   B. *The sentence*

   Pursuant to the multiple victim circumstance under the One Strike Sex law, the trial court sentenced Fernandez to 15 years to life for each offense of lewd or lascivious act on a child

---

[9]     All further undesignated statutory references are to the Penal Code.

under 14 years old, in counts 1, 2, 3, 4, 5, 7, and 10. Counts 2, 3, 4, 5, 7, and 10 were to be served consecutively. For counts 1 and 11, the court imposed concurrent sentences. Pursuant to section 654, the court imposed and stayed sentences of 15 years to life for each offense of oral copulation or sexual penetration of a child under 10 years old in counts 6, 8, and 9.

The court awarded presentence custody credit of 914 days and presentence conduct credit of 137 days for a total of 1,051 days.

## DISCUSSION

### I. Independent Review Pursuant to *People v. Wende*

We appointed counsel to represent Fernandez on appeal. Counsel filed an opening brief that included the facts and procedural history of the case and requested that we review the record and determine whether there are any arguable issues on appeal. (*Wende, supra*, 25 Cal.3d at p. 441.) Counsel advised Fernandez of the right to file a supplemental brief within 30 days from the date that she filed the opening brief. To date, Fernandez has not filed a supplemental brief.

We have examined the entire record. Other than the invalid award of presentence conduct credits, we are satisfied that no arguable issues exist, and Fernandez's counsel has fully satisfied her responsibilities under *Wende*. (*Smith v. Robbins* (2000) 528 U.S. 259, 279–284; *Wende, supra*, 25 Cal.3d at p. 441; *People v. Kelly* (2006) 40 Cal.4th 106, 123–124.)

### II. Presentence Conduct Credit

We observe that the trial court improperly awarded 137 days of presentence conduct credit with the 914 actual days of presentence custody credit for a total of 1,051 days. Because the

12

trial court sentenced Fernandez under the One Strike Sex law, he should not have received any presentence conduct credit.

In 2006, the Legislature amended the One Strike Sex law, as codified in section 667.61, by omitting the previous subdivision (j) and any reference to presentence conduct credit. (*People v. Adams* (2018) 28 Cal.App.5th 170, 182 [discussing the legislative history of Senate Bill No. 1128 (2005–2006 Reg. Sess.), including committee reports that state the bill eliminates conduct credits for inmates sentenced under the One Strike law].) Divisions Five and Seven of this District have concluded that when sentenced to an indeterminate term under the One Strike Sex law, a defendant is not entitled to any presentence conduct credit against the minimum terms. (*People v. Govan* (2023) 91 Cal.App.5th 1015, 1038; *Adams*, at p. 182.)

The trial court has a duty to award the correct number of days of presentence custody credit. (*People v. Acosta* (1996) 48 Cal.App.4th 411, 428, fn. 9.) A sentence is unauthorized if it awards credit that exceeds the statutory limits. (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1184.) The correct amount of credit can be awarded whenever the error is discovered. (*Ibid*.)

Fernandez is not entitled to a new sentencing hearing. Generally, on remand for resentencing, the trial court is not limited to correcting only the invalid part of the sentence. It may reconsider all sentencing choices. (*People v. Codinha* (2023) 92 Cal.App.5th 976, 994.) But this general rule applies only when resentencing requires the court to exercise discretion in structuring the sentence. Correction of presentence credits does not involve exercising discretion. (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1485; *People v. Aguirre* (1997) 56 Cal.App.4th 1135, 1139.) The error can be corrected without disturbing the

other aspects of the sentence, and there is no reason for full resentencing.

III. Additional Correction to the Abstract of Judgment

We also note that checkmarks should be placed in the boxes for item No. 8, the indeterminate term section in the abstract of judgment, and for "PC 667.61" to reflect sentencing under the One Strike Sex law. On remand, we direct the trial court to make these corrections.

## DISPOSITION

We delete the award of presentence conduct credit. We remand and direct the trial court to amend item No. 15 of the abstract of judgment by replacing 1,051 with 914 under Total Credits and by replacing 137 with zero under Local Conduct. We also direct the trial court to insert checkmarks in the box for item No. 8 of the indeterminate term section of the abstract of judgment and in the box for "PC 667.61" to reflect the sentence under the One Strike Sex law. The trial court is to ensure that a certified copy of the amended abstract of judgment is sent to the Department of Corrections and Rehabilitation. In all other aspects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HANASONO, J.*

We concur:

EDMON, P. J.

EGERTON, J.

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15